**MICHIGAN MILLERS MUTUAL INSURANCE CORPORATION, a foreign corporation, Plaintiff/Counter–Defendant,**

v.

**Jannelle R. BENFIELD, Defendant/Counter–Plaintiff.**

**No. 93–1283–CIV–T–17A.**

United States District Court, M.D. Florida, Tampa Division.

April 17, 1995.

John J. Pappas, Rebecca G. Casagrande, Butler, Burnette & Pappas, Tampa, FL, for Michigan Millers Mutual Insurance Corporation.

Bobby Gene Freemon, Jr., Law Offices of Bob G. Freemon, Tampa, FL, John W. Berry, Jr., Law Office of John W. Berry, New Port Richey, FL, for Janelle R. Benfield.

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 25) and Defendant's response thereto (Dkt. No. 27).

### I. FACTUAL BACKGROUND

Defendant Jannelle R. Benfield ("Benfield") was insured along with her ex-husband under a homeowner's insurance policy issued by Plaintiff Michigan Miller Insurance Company ("Michigan Miller"). On July 6, 1992, the Benfield residence caught fire. To date, the cause of this fire has not been determined.

Initially, Michigan Miller contended Benfield could not recover under the policy because she either "burned or caused the property to be burned." (Compl., Dkt. No. 1). However, in its Motion for Summary Judgment (Dkt. No. 25), Michigan Miller avers that because Benfield intends to "rely" on the fact that her ex-husband, a named insured at the time of the fire, was involved in the fire, she is precluded from collecting insurance proceeds pursuant to the terms of the insurance policy.

In response, Benfield contends that the insurance company is obligated to cover her for the damages she incurred as a result of the fire, and further has asserted a counterclaim against Michigan Miller for breach of contract. (Am., Dkt. No. 2) She avers that

she has no personal knowledge of the cause of the fire or the manner in which the fire started. (Jannelle Benfield Aff.) Further, she states that it is a possibility that her ex-husband was involved in the fire's origin, as they were estranged and he was hostile towards her at the time of the fire. (Jannelle Benfield's Dep.).

At the time of the incident, Lieutenant Brain Kehoe from the Sarasota Fire Department investigated the fire, and was unable to determine the cause of the fire. (Kehoe Aff.) He further stated that there was no evidence to indicate the fire was intentionally set, and therefore labeled this fire as undetermined.

Additionally, Bill Buckley, an Insurance Company Expert, stated that in his opinion, the fire was intentionally set. (Buckley Dep.) Buckley came to this conclusion because there was no accidental source of ignition available where the fire originated.

Finally, Benfield's husband asserts that he has no knowledge concerning the fire's origin. In his sworn statement, he says "what went on as far as the house and as far as the fire, I have no idea."

## II. ARGUMENTS

Plaintiff Michigan Miller brought an action for declaratory judgment in this Court to determine whether it is liable to Defendant Benfield for the fire damage. (Dkt. No. 1). Defendant Benfield answered, and asserted a counterclaim for breach of contract. (Dkt. Nos. 2, 14).

Specifically, Michigan Miller, in its Motion for Summary Judgment (Dkt. No. 25), claims that because Benfield intends to "rely" on the fact that her ex-husband, a named insured, was involved in the fire's origin, she is precluded from coverage because her husband's intentional act and fraud voided all coverage under the policy. Michigan Miller contends that, under Florida law, policy conditions applying to "an insured" refer to all insureds, and thereby indicates joint rights and obligations.

Therefore, because Benfield's policy conditions utilize the term "an insured," it is clear that Michigan Miller's intent was that coverage be treated as joint, and Benfield's ex-husband's alleged acts of setting the fire and defrauding Michigan Miller are properly attributed to Benfield herself.

In response, Benfield claims that the policy provides several coverage and therefore an intentional act by her ex-husband would not preclude coverage. Benfield responded initially by denying that she set the fire or misrepresented or concealed facts. She further stated that she will explore all possible causes of fire, and that she merely suspects that her husband may have caused fire. The burden, she argues, is upon the insurance company to show it was intentional. Further, in her Motion To Amend Answer and Counterclaim, to Realign Parties, and to Join Indispensable Party (Docket No. 14), she stated that if permitted to pursue this action in state court, she will claim that her husband either negligently caused the fire, or intentionally caused the fire that is the subject of her insurance claim.

## III. ANALYSIS

### A. Choice of Law

This Court has jurisdiction over this issue because of diversity of parties under 28 U.S.C. § 2201. One party is a Michigan corporation and the other an individual residing in Florida. The amount in controversy is expected to be over $50,000. The venue is properly located in the Middle District of Florida because the events leading to the insurance claim occurred in this district.

■ A court which sits in diversity jurisdiction is required to apply the rules of law for the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). This Court is currently faced with the task of interpreting an insurance contract. Both the Eleventh Circuit and the Florida Supreme Court have encouraged the application of local law in the state in which the insured is located. *Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116 (11th Cir.1990). Therefore, this Court will apply Florida law in determining the issues currently before it.

## 1512

### B. Standard for Summary Judgment

In a motion for summary judgment, a court must look to the allegations in the complaint and examine the record to determine whether there exists any genuine issue of material fact. If there is no dispute over an issue of material fact, summary judgment is proper. *Evans v. Firestone,* 457 So.2d 1351 (Fla.1984). The movant bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court cannot weigh conflicting evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). Therefore, it is under this standard that the Court must determine whether the moving party has sustained its burden of demonstrating a lack of any genuine issue of material fact with regard to the arson allegations and the policy coverage.

### C. Relevant Policy Language

The Homeowner's Insurance Policy issued by Michigan Miller to the Benfields provides protection for personal property destroyed by fire (Section I, Coverage C). However, Section I contains exclusions and conditions that limit this protection. Of relevance, the policy states:

**Section 1: EXCLUSIONS**

We do not insure for loss caused directly or indirectly by any of the following:

1(h): Intentional Loss, meaning any loss arising out of any act committed:

(1) by or at the direction of **an** insured; and

(2) with the intent to cause a loss.

**Sections I and II: CONDITIONS**

2. Concealment or Fraud: The entire policy will be void if, whether before or after a loss, **an** insured has:

 a. intentionally concealed or misrepresented any material fact or circumstance;

 b. engaged in fraudulent conduct; or

 c. made false statements;

relating to this insurance.

### D. Arson Allegations

The threshold issue in determining whether the policy covers the fire damages is whether this fire was accidental or intentional. The parties in this case have prematurely engaged in debate over whether the policy provides joint or several coverage, for this issue is moot until it is actually determined that an insured intentionally caused the fire.

Under Florida law, to establish a prima facie case of arson for purposes of denying coverage under an [ ] insurance policy, the party bearing the burden (the insurer) must put forth either circumstantial or direct evidence of motive, opportunity and an incendiary[1] cause of the fire such that reasonable people could conclude that an insured was guilty of the burning. *Insurance Co. of North America v. Valente,* 933 F.2d 921, 923 (11th Cir.1991) (citing *Cora Pub, Inc. v. Continental Casualty Co.,* 619 F.2d 482 (5th Cir. 1980)).

Once an insurer demonstrates a prima facie case of arson, the issue must proceed to the jury to determine whether arson was the actual cause of the fire. *D.R. Mead & Co. v. Cheshire of Florida, Inc.,* 489 So.2d 830 (Fla. 3rd DCA 1986). In *Cheshire,* the court concluded that there was undisputed evidence that the fire was of "incendiary origin." *Id.* at 831. The *Cheshire* court held that the trial court was incorrect in finding that the evidence was insufficient to create a jury question. *Id.* at 831–32.

A prima facie case of arson can be created through the utilization of circumstantial evidence which, taken as a whole, gives rise to an inference of arson. The critical question is whether the inference is "reasonably well-supported" by the evidence. *Cora Pub, Inc. v. Continental Casualty Co.,* 619 F.2d 482, 486 (5th Cir.1980). In *Cora Pub,* the court stated that where sufficient motive and opportunity are combined with proof of

---

**1.** Courts often employ the term "incendiary" to avoid confusion over the criminal and civil standards of proof for arson.

an incendiary cause of fire, courts have considered the arson defense to be supportable by inference. *Id.* at 484 (citing *Sullivan v. American Motorist Ins. Co.,* 605 F.2d 169 (5th Cir.1979)).

■ In the case at bar, Plaintiff Michigan Miller has failed to demonstrate a prima facie case of arson. Instead, Michigan Miller has simply relied on Defendant Benfield's "suspicions" regarding her ex-husband's possible involvement in the fire. In fact, Lieutenant Kehoe from the Sarasota Fire Department was unable to conclude that the fire was intentionally set. In contrast, Bill Buckley, an Insurance Company Expert, stated that in his opinion, the fire was intentionally set. Buckley came to this conclusion because there was no accidental source of ignition available where the fire originated.

Michigan Miller has not attempted to specifically plead that it is able to compile enough evidence to constitute a prima facie case of arson. In fact, it appears that Michigan Miller has completely by-passed this crucial issue and instead has "assumed" arson, apparently based on Benfield's assertions and a few investigative reports.

Therefore, this Court cannot issue a definitive ruling as to Benfield's entitlement to coverage under her insurance policy at this time. While the policy language is worth examining, the question of whether an insured actually committed arson must be resolved before Michigan Miller can proceed to step two. A genuine issue of material fact exists on the issue of arson.

### E. Policy Provides Joint Coverage

Once the cause of fire is determined, the question of whether the policy provides joint or several coverage to its insureds may become critical. If Michigan Miller can present enough evidence to establish a prima facie case of arson, and a jury finds that arson was committed by Benfield's husband, (assuming no involvement by Benfield herself), then it becomes critical to determine whether Benfield's ex-husband's actions preclude her recovery under the policy.

The issue turns on whether the policy language creates a joint or several obligation.

*Allstate Ins. Co. v. McCranie,* 716 F.Supp. 1440, 1447 (S.D.Fla.1989). In *McCranie,* the policy provided an exclusion of coverage for intentional acts committed by "an insured." *Id.* at 1447. The court adopted the reasoning that because "the exclusion applies to **an** insured, it applies to all claims which arise from the intentional acts of any one insured." *Id.* at 1448 (citing *Allstate v. Roelfs,* 698 F.Supp. 815, 822 (D.Alaska 1987)). Therefore, the use of "an insured" in the exclusion language resulted in a denial of coverage for the negligent acts of one insured if a coinsured committed an intentional act. *Id.* at 1448.

■ "Ambiguities in an insurance contract should be resolved in favor of the insured and against the insurer, and . . . limitations or exclusions must be narrowly construed." *Id.* at 1447. For example, in *Auto-Owners Ins. Co. v. Eddinger,* 366 So.2d 123 (Fla. 2nd DCA 1979), a court held that coverage was several when a policy provided that "the entire policy shall be void if, . . . **the** insured has willfully concealed or misrepresented any material fact." In *Eddinger,* the court stated that "the question whether the coverage was joint or several must be construed in favor of the appellee since there is no clear indication to the contrary." *Id.* at 124. The policy was capable of more than one interpretation, and therefore the court was "persuaded . . . that the fraud of a coinsured does not void the coverage of the innocent co-insured." *Id.*

Therefore, when policies are capable of more than one interpretation, the coverage is generally found to be several rather than joint. For instance, in *Overton v. Progressive Ins. Co.,* 585 So.2d 445 (Fla. 4th DCA 1991), a jury found that the coinsured husband had intentionally started a car fire. *Id.* at 446. The wife, as coinsured, brought suit to recover under the policy. *Id.* The exclusionary clause in *Overton* failed to specifically identify the insureds with any terminology, and the court therefore construed this ambiguity to dictate a several policy. *Id.* at 449.

■ In addition, policy generally dictates that innocent coinsureds may recover even where a loss was caused by one insured's

criminal acts **unless** the contract contains an express clause excluding this coverage. *State Farm Fire & Casualty Ins. Co. v. Kane,* 715 F.Supp. 1558, 1561 (S.D.Fla.1989). In *Kane,* the policy excluded coverage for "losses ... caused by **any** fraudulent ... act done by **any** insured." *Id.* at 1561. The court distinguished the use of "any insured" from policies utilizing the phrase "the insured" and found an unambiguous contractual intent to provide joint obligations. (citing *Sales v. State Farm & Casualty Co.,* 849 F.2d 1383, 1385 (11th Cir.1988)).

 These cases make clear that the use of "the insured" generally creates several obligations, while use of "any insured" generally creates joint obligations. In our case, the policy utilizes the term "an insured" in the applicable provisions. As stated in *McCranie,* when "the exclusion applies to **an** insured, it applies to all claims which arise from the intentional acts of any one insured." 716 F.Supp. at 1448 (citing *Allstate v. Roelfs,* 698 F.Supp. 815, 822 (D.Alaska 1987)).

However, the coinsured in *McCranie* was not entirely an "innocent coinsured." *Id.* at 1448. In addition, public policy concerns may take precedence. As stated in *Lumbermens Mutual v. Falasiri Oriental Rugs,* 625 So.2d 1234, 1235 (Fla. 2nd DCA 1993), "arson is several and separate and [ ] the husband's fraud cannot be attributed or imputed to the wife; thus, the fraud of the husband does not void the policy as to the wife."

Therefore, this Court declines to issue a determinative ruling on whether the policy in question creates joint or several rights and obligations until such time as the threshold question is answered.

### IV. CONCLUSION

Because this Court has determined that a genuine issue of material fact exists as to whether the fire giving rise to the damage was the result of an intentional act, Plaintiff Michigan Miller's Motion for Summary Judgment is **denied.**

DONE AND ORDERED.