United States Court of Appeals,

Eleventh Circuit.

Nos. 95-4731, 95-4797.

GOLDEN DOOR JEWELRY CREATIONS, INC., a corporation, and Suisse Gold Assayer & Refinery, Inc., a corporation, Plaintiffs,

Leach & Garner Company, Westway Metals Corp., Plaintiffs-Intervenors-Appellees,

Capital Bank and Stern Metals, Inc., Plaintiffs-Intervenors,

v.

LLOYDS UNDERWRITERS NON-MARINE ASSOCIATION, an association licensed to underwrite insurance in the State of Florida, and Peter Frederick Wright, Defendants-Appellants,

Sanford Credini and Lawrence Systems, Inc., Defendants-Intervenors.

LEACH & GARNER COMPANY, Plaintiff-Appellee,

v.

Peter Frederick WRIGHT, Defendant-Appellant.

GOLDEN DOOR JEWELRY CREATIONS, INC., a corporation, and Suisse Gold Assayer & Refinery, Inc., a corporation, Plaintiffs,

Leach & Garner Company, Westway Metals Corp., Plaintiffs-Intervenors-Appellants,

Capital Bank and Stern Metals, Inc., Plaintiffs-Intervenors,

v.

LLOYDS UNDERWRITERS NON-MARINE ASSOCIATION, an association licensed to underwrite insurance in the State of Florida, and Peter Frederick Wright, Defendants-Appellees,

Sanford Credini and Lawrence Systems, Inc., Defendants-Intervenors.

LEACH & GARNER COMPANY, Plaintiff-Appellant,

v.

Peter Frederick WRIGHT, Defendant-Appellee.

July 28, 1997.

Appeals from the United States District Court for the Southern District of Florida. (No. 83-1409-CIV-SMA), Sidney M. Aronovitz, Judge.

Before HATCHETT, Chief Judge, BARKETT, Circuit Judge, and RONEY, Senior Circuit Judge.

HATCHETT, Chief Judge.

In this appeal involving a claim for breach of an insurance contract, we affirm the district court's (1) decision granting summary judgment against the insurer, (2) damage award and (3) denial of supersedeas bond premiums. We reverse and remand for the district court to recalculate the prejudgment interest from the date that the payment became due rather than the date of loss.

## FACTS

Sanford Credini and his wife each owned fifty percent of two companies, Golden Door Jewelry Creations, Inc. (Golden Door) and Suisse Gold Assayer and Refinery, Inc. (Suisse Gold). Credini functioned as the president and "principal operating officer" of both corporations. In addition to common ownership, the businesses shared common office space in Miami, Florida. Suisse Gold purchased scrap gold for refinement and resale. Golden Door purchased refined gold and precious metals, from which it created jewelry and other objects for resale. The businesses often acted in tandem, with Suisse Gold selling most of its output to Golden Door.

Both companies obtained their respective gold supplies from third parties. Leach and Garner Company (Leach) consigned refined gold to Golden Door pursuant to a consignment agreement. Westway Metals Corp. (Westway) entered into a similar consignment agreement for scrap gold with Suisse Gold. Golden Door retained a warehouser, Lawrence Systems (Lawrence), to store the consigned materials. Lawrence stored, and retained in its possession, Leach's and Westway's gold stock in two separate safes on the premises of Golden Door and Suisse Gold, but one representative of Golden Door and Suisse Gold, respectively, also retained access to the gold.

In 1981, Golden Door and Suisse Gold purchased a "jeweller's block policy" from Lloyds Underwriters Non-Marine Association and its representative underwriter, Peter Wright (collectively, Lloyds). The policy insured all jewelry products owned by, delivered to or entrusted to Golden Door or Suisse Gold against all risks, including theft, subject to several exclusions. The policy specifically named the insured as "Sanford [Cr]edin, doing business as Golden Door ... and/or Suisse Gold." Over the next several years, Golden Door and Suisse Gold renewed and amended the policy, adding excess policies and endorsements. These amendments increased the coverage for each company to $6,000,000. One endorsement added Westway as a "loss payee" for coverage afforded

to Suisse Gold. Leach was not added as a loss payee.

On February 10, 1983, an unknown party, later identified as Credini, stole $9,000,000 of goods from Golden Door, Suisse Gold and the safes containing Leach's and Westway's gold. Attempting to conceal his theft, Credini initially filed a claim with Lloyds. Upon investigating the claim, however, Lloyds refused payment because it suspected that Credini had been involved in the loss. In 1988, following a flight from jurisdiction and extradition back to the United States, a grand jury indicted Credini, and he pleaded guilty to conspiracy in the United States District Court for the Southern District of Florida.

## PROCEDURAL HISTORY

On May 5, 1983 (prior to Credini's guilty plea), Golden Door and Suisse Gold filed an action for breach of contract against Lloyds in the Circuit Court for the Eleventh Judicial Circuit of Dade County, Florida, seeking to recover under the policy. On June 8, 1983, Lloyds filed a petition for removal to the United States District Court for the Southern District of Florida. Lloyds's answer defended the action on the ground that the loss resulted from the dishonest act of an assured or its employee, an exception to the policy enumerated in Paragraph 5(A). Lloyds also asserted that the assureds' failure to maintain a detailed and itemized list of property precluded coverage pursuant to Paragraph 8(A) of the policy.

On March 13, 1984, Leach intervened as a plaintiff and asserted its right to recover as a consignor-beneficiary. On December 11, 1984, Westway also intervened as a plaintiff.[1] Both Leach and Westway filed separate actions against Lloyds on the same grounds. The district court consolidated these actions.

On August 15, 1985, Lloyds filed its first motion for summary judgment. Following discovery, Lloyds renewed its motion and the district court issued its first published disposition in this case. The court granted Lloyds's motion for summary judgment in part, barring Credini, Golden Door and Suisse Gold from recovery for violating Paragraph 8(A). *Golden Door Jewelry Creations,*

---

[1] Other companies also intervened but have been dismissed during the course of this litigation.

*Inc. v. Lloyds Underwriters,* 748 F.Supp. 1529, 1534-35 (S.D.Fla.1990) (*Golden Door I*). The court denied, however, Lloyds's motions as against Leach and Westway (hereinafter, the Consignors) and granted the Consignors' motions for summary judgment. *Golden Door I,* 748 F.Supp. at 1536-46. The court held that the Consignors had a direct right of recovery under any of three theories: (1) as third-party beneficiaries; (2) under the legal liability of Golden Door and Suisse Gold (hereinafter, the Insureds); or (3) pursuant to a reformation of the contract giving the Consignors status as loss payees and/or named co-insureds. *Golden Door I,* 748 F.Supp. at 1537. In its reformation of the policy, the court also rendered the policy defenses inapplicable to the Consignors, thus denying Lloyds's argument of policy defenses and coverage exclusions. *Golden Door I,* 748 F.Supp. at 1543-46.

Upon Lloyds's motion for reconsideration, the court reaffirmed its holding that the Consignors "entrusted" the goods to the Insureds as required under the policy and that Credini's dishonesty did not preclude the Consignors' ability to recover. *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters,* 758 F.Supp. 708, 711-15 (S.D.Fla.1991) (*Golden Door II*). The court also awarded damages to the Consignors and prejudgment interest from the date of loss. *Golden Door II,* 758 F.Supp. at 721-22. Finally, the district court adopted the recommendation of the Special Master not to strike Lloyds's pleadings despite Lloyds's payments to fact witnesses. *Golden Door II,* 758 F.Supp. at 723.

On appeal, this court vacated the district court's decision and remanded for further proceedings. *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n,* 8 F.3d 760 (11th Cir.1993) (*Golden Door III*). This court first rejected Lloyds's argument that the policy did not include coverage for the legal liability of the Insureds. *Golden Door III,* 8 F.3d at 765. The panel reversed the district court's reformation of the contract, however, holding that the facts did not support reformation under Florida law and that the Consignors' interest in recovery was subject to the policy's conditions and exclusions. *Golden Door III,* 8 F.3d at 766-68. We remanded for the district court to determine whether Credini's thievery breached the policy exclusions, thus precluding coverage for all parties under the policy. *Golden Door III,* 8 F.3d at 768. Finally, this

court also declined to address Lloyds's payments to witnesses because the district court had not sufficiently addressed the merits of the claim. *Golden Door III,* 8 F.3d at 768-69. On August 22, 1994, this court issued a corrected Judgment Mandate awarding Lloyds "costs on appeal to be taxed by the Clerk of this court."

On remand, the district court reaffirmed its prior decisions, albeit on different grounds. The court first adopted in part, and overruled in part, the opinion of the Special Master regarding Lloyds's payments to witnesses. *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n,* 865 F.Supp. 1516 (S.D.Fla.1994) (*Golden Door IV*). The court rejected the Consignors' argument that the payments made to fact witnesses violated 18 U.S.C. § 201(c)(2). *Golden Door IV,* 865 F.Supp. at 1523-24. The court determined, however, that the payments were unethical and in violation of Rule 4-3.4 of the Rules of Professional Conduct, as adopted in Florida during the relevant time period. *Golden Door IV,* 865 F.Supp. at 1524-26. As a sanction, the court excluded all evidence tainted by the ethical violations. *Golden Door IV,* 865 F.Supp. at 1526-27.

In a separate opinion, the district court also reconsidered the parties' motions for summary judgment. *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters,* 888 F.Supp. 1150 (S.D.Fla.1995) (*Golden Door V*). As before, the court rejected Lloyds's motions and granted summary judgment to the Consignors. The court held that *Golden Door III* limited the scope of the remand to the application of the policy exclusions to the Consignors. *Golden Door V,* 888 F.Supp. at 1153. The court thus held that the Consignors could recover pursuant to the legal liability provisions because the coverage exclusions were severable and only precluded the recovery of the assured who arranged the theft. *Golden Door V,* 888 F.Supp. at 1155-57. In an unpublished companion order, the court accepted the magistrate judge's recommendation and granted Lloyds reimbursement for costs, rejecting Lloyds's argument that the premiums on its supersedeas bonds should be taxed as costs under Federal Rule of Appellate Procedure 39. Upon Lloyds's motion to reconsider, the court affirmed its decision except that the court revised the applicable prejudgment interest rate from twelve percent to eight percent after December 31, 1994, pursuant to sections 55.03 and 687.01 of the Florida Statutes. Lloyds filed this appeal of *Golden Door V* and its two

companion orders, and the Consignors cross-appealed.

CONTENTIONS

Lloyds contends that the district court erroneously granted summary judgment to the Consignors. According to Lloyds, the Consignors have no direct right of recovery and their interests are subject to the terms and exclusions of the policy. As loss payees or third party beneficiaries, the Consignors are barred from recovery where the named insured cannot recover or where the policy has been breached. Lloyds argues that several provisions of the policy estop the Consignors from recouping their losses: (1) the Consignors did not entrust the stolen property to the Insureds, pursuant to Paragraph 3(C), because the Consignors delivered and entrusted their property to Lawrence, the warehouser; (2) recovery is barred because the district court previously granted summary judgment to Lloyds against the named assureds—Credini, Golden Door and Suisse Gold—for violating Paragraph 8(A) of the policy; (3) paragraph 5(A) of the policy precludes recovery for losses caused by dishonest acts of the "Assured or his or their employees"; and (4) Credini's fraudulent claim on behalf of the Insureds violated Paragraph 21 of the policy, causing the policy to become void. Lloyds also asserts that the district court erroneously limited the scope of the remand to the applicability of the policy exclusions and the witness payment issue.

Lloyds offers three additional challenges to the remand decision. First, Lloyds contends that the district court improperly calculated the Consignors' losses to include intangible security interests, including gold that represented collateral for debts that the Insureds owed to the Consignors. Lloyds argues that pursuant to Paragraph 3(A), the policy only provided coverage for tangible property. Second, Lloyds argues that the district court erroneously withheld reimbursement for the supersedeas bond premiums Lloyds paid for the first appeal, as Federal Rule of Appellate Procedure 39 provides for the inclusion of premiums paid for costs of supersedeas bonds in the taxation of appellate costs when the appeal results in a reversal. Third, the district court incorrectly computed the prejudgment interest from the date of loss rather than from the date that the payments were due.

The Consignors contend that the district court properly awarded them summary judgment because the policy language renders the exclusions severable, thereby allowing innocent assureds

to recover despite the misconduct of a co-assured. Under these facts, the innocent Insureds, Golden Door and Suisse Gold, did not violate any of the policy exclusions. Moreover, the Consignors' property is covered under Paragraph 3(C) because both the district court and this court properly held that the Consignors entrusted their property to the Insureds. In addition, the summary judgment order imposed against the Insureds for violating Paragraph 8(A) does not bar the Consignors' recovery because that paragraph is inapplicable to losses of entrusted property. Furthermore, Credini's violation of the dishonest acts provision in Paragraph 5(A)(1) is inapplicable because the policy distinguishes officers from employees. Finally, according to the Consignors, Paragraph 21 is inapplicable; Credini's acts cannot be imputed to the Insureds because Credini acted adversely to their interests.

The Consignors offer several responses to Lloyds's additional contentions. First, Lloyds failed to present a specific showing of error in the valuation of the Consignors' losses or an alternative valuation. Paragraph 3(C) provides coverage for tangible and intangible property, and the record clearly supports the district court's calculation of the gold that the Consignors entrusted to the Insureds. Second, the court properly denied supersedeas bond premium costs because *Golden Door III* merely vacated, but did not completely reverse, the district court's prior decision. Therefore, under these circumstances, Rule 39(a) requires this court to expressly provide for the appellate costs awarded. Third, the district court properly ordered interest from the date of loss because under Florida law the insurer's denial of coverage precludes the insurer from enforcing a provision for payment after the date of loss.[2]

## DISCUSSION

---

[2]On cross-appeal, the Consignors argue that: (1) the district court should have found that Lloyds's payments to fact witnesses violated 18 U.S.C. § 201(c)(2) because the statute does not require that the payments constitute a bribe for false testimony; and (2) the court should have stricken Lloyds's pleadings as the appropriate sanction for these payments. We reject the Consignors' argument regarding section 201(c)(2) as meritless in light of our decision in *United States v. Moody,* 977 F.2d 1420, 1425 (11th Cir.1992) (section 201(c)(2) "obviously proscribes a bribe for false testimony; persons of ordinary intelligence would come to no other conclusion"), *cert. denied,* 507 U.S. 944, 113 S.Ct. 1348, 122 L.Ed.2d 730 (1993). Moreover, we find that the sanction imposed—barring Lloyds from using the testimony of paid witnesses—adequately penalized Lloyds for violating Rule 4-3.4(b) of the Rules of Professional Conduct and did not constitute an abuse of the district court's discretion.

The district court properly interpreted the scope of this court's previous remand order and granted summary judgment to the Consignors. We conduct a *de novo* review of a district court's decision to grant summary judgment. *Rooney v. Watson,* 101 F.3d 1378 (11th Cir.1996); *Duke v. Massey,* 87 F.3d 1226 (11th Cir.1996). Applying the standards that the district court employed, we independently review the record to determine whether a genuine issue as to any material fact exists. "A genuine issue of material fact exists when a reasonable trier of fact considering the record evidence could find for the nonmoving party." *Duke,* 87 F.3d at 1231. We review the evidence in the light most favorable to the nonmoving party, with all reasonable inferences in support thereof. *Rooney,* 101 F.3d at 1380.

Prior to addressing Lloyds's contentions regarding the applicability of the policy exclusions under these facts, we must first address two foundational issues that this court's previous decision forecloses. Lloyds first argues that the legal liability provision of the policy does not provide the Consignors with a direct claim for recovery. Paragraph 3 of the policy provides:

3. The property insured is as follows:

> (C) Property as above described, delivered or entrusted to the Assured by others who are dealers in such property or otherwise engaged in the jewellery trade, but only to the extent of the Assured's own actual interest therein because of money actually advanced thereon, or legal liability for loss of or damage thereto.

In *Golden Door III,* we held that "the conclusion is inescapable: the jewelers' block policy includes coverage for the legal liability of the assured deriving from the loss of the property." 8 F.3d at 765. In fact, we found that "Lloyds ... assumed that consignors would have coverage; the coverage they anticipated, however, was *within the terms and exclusions of the policy.*" *Golden Door III,* 8 F.3d at 767. We vacated the district court's final judgment and remanded for reconsideration on the ground that the district court erroneously reformed the insurance contract and insulated the Consignors from the applicable policy exclusions. *Golden Door III,* 8 F.3d at 768. This determination did not foreclose the Consignors' right to recovery; rather, this court opined that the policy exclusions circumscribed the Consignors' rights under the policy. *See Golden Door III,* 8 F.3d at 767 n. 11. We remanded the case for the district court to resolve "whether the facts of this case satisfy this coverage exclusion." *Golden Door III,* 8 F.3d at 768. We therefore agree with the

district court that "the [C]onsignors may recover directly against Lloyds [pursuant to the legal liability provisions of the policy], provided the terms and conditions of the policy do not preclude recovery." *Golden Door V,* 888 F.Supp. at 1158.

Lloyds also challenges the applicability of the legal liability coverage under these facts. Lloyds argues that the Consignors did not entrust their property to the Insureds, as required for the legal liability coverage to attach pursuant to Paragraph 3(C), because Lawrence actually held the gold consigned to the Insureds. This court's prior decision forecloses this issue as well. In *Golden Door III,* we held that "the property at issue in this case falls into the third class of property, which is defined as ... [p]roperty ... entrusted to the Assured...." 8 F.3d at 765. Under the law of the case doctrine, this issue should not be relitigated. *See Burger King Corp. v. Pilgrim's Pride Corp.,* 15 F.3d 166, 169 (11th Cir.1994) ("[F]indings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial or on a later appeal."); *see also Wheeler v. City of Pleasant Grove,* 746 F.2d 1437, 1440 (11th Cir.1984) (law of the case doctrine encompasses issues explicitly and implicitly decided). The Consignors therefore may seek compensation under the legal liability provision provided that no policy exclusions apply. We must now examine Lloyds's arguments in that regard.

A. Policy Exclusions

The severability of the policy exclusions is the foundational premise of the district court's decision. Severability of contractual provisions protects a named assured from the contractually violative acts of a co-assured. The determination of severability depends on the contractual language at issue. *Overton v. Progressive Ins. Co.,* 585 So.2d 445, 447 (Fla. 4th D.C.A.1991).[3] A policy jointly covers all insured parties if fraud or dishonesty on behalf of *any* insured precludes coverage. *See State Farm Fire & Cas. Ins. Co. v. Kane,* 715 F.Supp. 1558, 1561-62 (S.D.Fla.1989) (citing *Sales v. State Farm Fire & Cas. Co.,* 849 F.2d 1383, 1385 (11th Cir.1988), *rev'd on other grounds,* 902 F.2d 933 (11th Cir.1990)). Inclusion of the phrase "the insured," on the contrary, permits an innocent coinsured to recover. *See Michigan Millers Mut. Ins. Corp. v. Benfield,* 902

---

[3]The parties do not dispute that Florida law applies to this diversity action.

F.Supp. 1509, 1514 (M.D.Fla.1995); *cf.* *Sales,* 849 F.2d at 1385 (distinguishing use of "any insured" from "the insured"); *Allstate Ins. Co. v. McCranie,* 716 F.Supp. 1440, 1447 (S.D.Fla.1989) (use of the phrase "an insured" excludes coverage for "all claims which arise from the intentional acts of any one insured"), *aff'd,* 904 F.2d 713 (11th Cir.1990). Florida courts have found that the term "the assured" is, at least, ambiguous and requires a finding of severability. *See Auto-Owners Ins. Co. v. Eddinger,* 366 So.2d 123, 124 (Fla.2d D.C.A.1979); *see also Overton,* 585 So.2d at 449. The Florida Supreme Court cited *Eddinger*'s innocent co-insured doctrine with approval in *Everglades Marina, Inc. v. American Eastern Development Corp.,* 374 So.2d 517, 519 (Fla.1979). The policy at issue herein employs the phrase "the Assured," and we therefore deem the policy provisions severable.

1. Paragraph 8(A)

This provision of the policy, as well as the previous determinations of the district court, foreclose Lloyds's contention that the summary judgment previously imposed against the Insureds precludes the Consignors' recovery. In *Golden Door I,* the district court entered summary judgment against Credini, Golden Door and Suisse Gold for failure to properly maintain an inventory of their property pursuant to Paragraph 8(A) of the policy. *Golden Door I,* 748 F.Supp. at 1535-36. Paragraph 8(A) states:

> The Assured will maintain a detailed and itemized inventory of his or their property and separate listing of all travellers' stocks, in such manner that the exact amount of loss or damage can be accurately determined therefrom by [Lloyds].

As referenced above, Paragraph 3 of the policy delineates the three categories of property to which coverage is extended. Paragraph 3(A) describes the property of the assureds:

> Pearls, precious and semi-precious stones, jewels, jewellery, watches and watch movements, gold, silver, platinum, and other precious metals, alloys and other stock usual to the conduct of the Assured's business, *owned by the Assured.*

(emphasis added). Paragraph 3(C), as quoted above, describes property "delivered or entrusted to the [a]ssured by others."[4]

The policy language thus clearly distinguishes between the property coverage afforded to

---

[4]None of the parties contend that the terms of Paragraph 3(B) are relevant to this appeal.

the Paragraph 3(A) property of the assureds and the legal liability coverage provided for the Paragraph 3(C) property entrusted to the assureds. The inventory requirements of Paragraph 8(A) apply only to Paragraph 3(A) property. *Golden Door V,* 888 F.Supp. at 1159. The Insureds' breach of the record-keeping provisions of Paragraph 8(A) therefore only precluded them from recovering for the loss of their own property, as defined in Paragraph 3(A). *See Golden Door I,* 748 F.Supp. at 1535-36 ("This limited ruling shall not be interpreted, however, to impact upon the opportunities for recovery provided the intervenors...."). Absent additional breaches of the policy, the remainder of the policy remains intact and the legal liability provisions remain accessible to the Insureds. *See* 8 Couch on Insurance 2d § 37A:797-98 (1985). The Consignors are therefore entitled to seek recovery for Paragraph 3(C) property because Lloyds has not shown that either the Insureds or the Consignors violated the inventory requirements of Paragraph 8(A) or any other provision with respect to the entrusted property.

2. Paragraph 5(A)

 Lloyds's reliance on the dishonest acts exception of Paragraph 5(A) is also misguided. Paragraph 5(A) excludes recovery for losses resulting from

> [l]oss, damage or expense caused by or resulting from sabotage, theft, conversion or other act or omission of a dishonest character (1) on the part of the Assured or his or their employees, or (2) on the part of any person to whom the property hereby insured may be delivered or entrusted by whomsoever for any purpose whatsoever....

Lloyds contends that Credini's theft of the property violated this provision because Credini acted as an "employee" pursuant to Paragraph 5(A)(1). That is, Lloyds argues that Credini held the status of both an employee and an officer of the Insureds. In the alternative, Lloyds asserts that this court must impute Credini's unlawful act to the Insureds under Paragraph 5(A)(1) or as "persons to whom the property ... [was] entrusted" under Paragraph 5(A)(2).

 "Under the ordinary principals [sic] of contract interpretation, a court must first examine the natural and plain meaning of a policy's language." *Key v. Allstate Ins. Co.,* 90 F.3d 1546, 1548-49 (11th Cir.1996). Where the policy language is inconsistent, ambiguous or otherwise not open to reasonable construction, the court must interpret the policy in accordance with the applicable rules of construction. Florida law provides that ambiguities should be construed against the drafter of the

contract. *See Hurt v. Leatherby Ins. Co.,* 380 So.2d 432, 434 (Fla.1980). "[A]mbiguities in insurance contracts generally are construed in favor of providing coverage." *Key,* 90 F.3d at 1549; *see also Nu-Air Mfg. Co. v. Frank B. Hall & Co. of N.Y.,* 822 F.2d 987, 992 (11th Cir.1987) ("Florida law requires that we resolve a conflict between the provisions of an insurance contract so as to afford maximum coverage to the policyholder."), *cert. denied,* 485 U.S. 976, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988).

The policy itself belies Lloyds's claim that Credini should be considered an employee for purposes of Paragraph 5(A)(1).[5] The policy distinguishes between corporate officers and employees. Paragraph 5, upon which Lloyds relies, excludes coverage for the dishonest acts of employees. Paragraph 5(H) excludes coverage for property worn by "the Assured, officer of the corporation, member of the firm, director, agent, employee, servant, or messenger of the Assured...."

We cannot accept Lloyds's contention that an officer is an employee for purposes of Paragraph 5(A). As the district court held:

> The adoption of the expansive language in [Paragraph] 5(H) demonstrates that the drafter of the policy had contemplated a policy exclusion that would cover any person associated with the Assured. The exclusion in [Paragraph] 5(A), on the other hand, is much more limited in scope, covering only the Assured and "employees."

*Golden Door V,* 888 F.Supp. at 1156. In its brief, Lloyds admits that Credini was an officer of the Insureds, but, nonetheless, Lloyds seeks to obtain the benefit of both titles. Adopting such an interpretation would render much of the language in Paragraph 5(H) superfluous because the term "employee" in paragraph 5(A)(1) would encompass several of the positions specifically listed in the former provision. "[A]n interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable." *Premier Ins. Co. v. Adams,* 632 So.2d 1054, 1057 (Fla. 5th D.C.A.1994); *see also* Restatement (Second) of Contracts § 203(a) (1981) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."); *cf.*

---

[5]As discussed above, the contractual provisions are severable, creating separate contractual obligations with each insured. *See Eddinger,* 366 So.2d at 124. In order to preclude coverage, Lloyds must therefore show that Credini acted on behalf of the Insureds, causing the Insureds to forfeit their status as innocent co-insureds.

*Maccaferri Gabions, Inc. v. Dynateria, Inc.,* 91 F.3d 1431, 1442 (11th Cir.1996) ("[W]e are mindful of the need to give effect to the entire agreement and to avoid an interpretation that creates an unnecessary conflict between its terms."), *cert. denied,* --- U.S. ----, 117 S.Ct. 1430, 137 L.Ed.2d 539 (1997). Furthermore, an exclusionary provision must be narrowly and literally construed to ensure that it unambiguously prohibits coverage. *See Indiana Ins. Co. v. Miguelarcaina,* 648 So.2d 821, 823 (Fla.3d D.C.A.1995); *see also Hodges v. National Union Indem. Co.,* 249 So.2d 679, 681 (Fla.1971).[6]

Lloyds's alternative contention regarding the application of Paragraph 5(A)(2) also lacks merit. Lloyds argues that Credini acted on behalf of the Insureds at the time of the theft. Under this theory, neither Golden Door nor Suisse Gold is an "innocent co-assured" because the Consignors entrusted their property to the Insureds, and Credini, as an officer of both corporations, functioned as an extension of the Insureds. Lloyds, citing *Cora Pub, Inc. v. Continental Casualty Co.,* 619 F.2d 482 (5th Cir.1980), contends that a corporate entity cannot recover under an insurance policy when the president, principal operating officer and fifty percent shareholder steals or destroys the insured property.[7]

We reject the invitation to impute Credini's illegal acts to the Insureds. Florida law prohibits attributing the acts of a corporate officer to the corporation where the officer acts outside of his authority or adversely to the interests of the corporate entity. *See State Dep't of Ins. v. Blackburn,* 633 So.2d 521, 524 (Fla.2d D.C.A.1994); *see also Lanchile Airlines v. Connecticut Gen. Life Ins. Co. of N. Am.,* 759 F.Supp. 811, 814 (S.D.Fla.1991) ("knowledge and conduct of an agent will not

---

[6]While the district court cited *Flight Equipment and Engineering Corp. v. Shelton,* 103 So.2d 615, 623 (Fla.1958), for the proposition that the Florida Supreme Court has "drawn a distinction between corporate officers and employees," we are not convinced that this holding remains viable. *See* Fla. Stat. § 607.01401(9) (1993) (defining the term "employee" under the Florida Business Corporation Act as "includ[ing] an officer but not a director.") Despite our misgivings about *Shelton,* the distinction between "officer" and "employee" found in the terms of this policy supports the district court's determination.

[7]On the previous remand, Lloyds argued that the "sole actor doctrine" required that the district court attribute Credini's actions to the Insureds given Credini's status as the primary representative of the Insureds. *See* Vail Nat. Bank v. Finkelman, 800 P.2d 1342, 1345 (Colo.App.1990). Lloyds failed to explicitly assert this contention in its briefs, and we regard it abandoned for purposes of this appeal.

be imputed to a principal if an agent is secretly ... acting adversely to the principal and entirely for his own or another's purposes.") (internal quotation marks omitted); *Tew v. Chase Manhattan Bank, N.A.,* 728 F.Supp. 1551, 1560. (S.D.Fla.1990).

The underlying facts show that Credini did not act in furtherance of the Insureds' interests when he stole company property and subsequently filed a fraudulent claim for the loss. In the indictment to which Credini pleaded guilty, the government charged that "Credini unlawfully entered the safes of Lawrence Systems and stole the gold supplies which were the property of Leach and Garner and Westway, and embezzled the gold of Golden Door and Suisse Gold, to pay his casino gambling losses." Credini therefore perpetrated the theft and embezzlement solely for his own benefit. Credini's actions represent not only a disregard for the interests of the Insureds, they were directly antagonistic to those interests.[8]

3. Paragraph 21

Our decision not to impute Credini's actions to the insured also forecloses Lloyds's reliance on the exclusion in Paragraph 21, which provides:

> If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

Lloyds contends that Credini's fraudulent claim and the Insureds' failure to amend or rescind the claim upon notice of the impropriety voided the policy and precludes all coverage.

As stressed above, the use of the term "the Assured" renders Paragraph 21 severable. Credini's actions are therefore distinguishable from the innocent Insureds unless we impute Credini's actions to the Insureds. As previously discussed, Credini's actions should not be imputed to the Insureds because Credini acted adversely to their interests.

Lloyds's attempt to separate the theft from the fraudulent claim lacks merit. Although Credini filed the claim in order to reimburse the Insureds for the property he stole, in doing so he acted out of self-interest—to cover his tracks. It is disingenuous to distinguish the theft from the

---

[8]We also refuse to accept Lloyds's contention that Credini's wife implicitly participated in the robbery or the ensuing attempted coverup. Indeed, Lloyds admits that it presented no record evidence of Credini's wife's knowledge or participation in the illegal scheme.

claim because they both constituted integral parts of Credini's scheme. This fraudulent, illegal scheme was adverse to the corporation's interests. Moreover, as the district court held, "[w]ith no imputation of knowledge, the corporations did not know the proof of loss was false." *Golden Door V,* 888 F.Supp. at 1159. The Insureds therefore did not knowingly submit a false or fraudulent claim, as required to void the policy under Paragraph 21. Furthermore, neither the Insureds nor the Consignors violated any alleged duty to amend the claim.

In sum, we hold that Lloyds has not shown that either the Consignors or the Insureds violated the policy exclusions. The Consignors are therefore entitled to recover their losses under the legal liability provisions.

B. Calculation of Damages

We now consider whether the district court erroneously calculated the Consignors' damages to include non-covered property. We ordinarily review the district court's factual findings for clear error. *Davis v. Prudential Sec., Inc.,* 59 F.3d 1186, 1188 (11th Cir.1995). In this challenge, however, it appears that Lloyds finds fault with the district court's interpretation of the policy coverage rather than the monetary value attached to the property itself. Thus, we review the district court using the *de novo* standard. *See Zaklama v. Mount Sinai Med. Ctr.,* 906 F.2d 650, 652 (11th Cir.1990).

The district court properly interpreted the policy coverage and calculated the losses. Lloyds erroneously relies on the text of Paragraph 3(A) for its argument that the policy covers only tangible property. This reliance is misplaced, however, because the legal liability coverage provided to the Consignors is derived from Paragraph 3(C) rather than Paragraph 3(A). Paragraph 3(C) protects property "to the extent of the Assured's own interest therein because of money actually advanced thereon, or legal liability for loss of or damage thereto." The Insureds retained an interest in the gold which the Consignors entrusted to them, even if the parties used a portion of the gold for security purposes.

The district court rendered a detailed analysis of Lloyds's non-tangible losses argument in *Golden Door II,* 758 F.Supp. at 719-20. The court properly held that the " "legal liability' under the

consignment agreements encompasses a great deal more than the gold held on consignment for public sale ... and include[s] ... the gold so held to secure additional obligations." *Golden Door II,* 758 F.Supp. at 720. We agree that Paragraph 3(C) encompasses both tangible property and gold representing indebtedness to the Consignors. Lloyds cannot use Paragraph 3(A) to limit the legal liability coverage described in Paragraph 3(C).

C. Supersedeas Bond Premiums

The next issue for consideration is whether the district court erroneously held that premiums on supersedeas bonds are not included in the taxation of costs unless the appellate court so orders. We review the district court's decision *de novo.* Federal Rule of Appellate Procedure 39(a) provides that "if a judgment is affirmed or reversed in part, or is vacated, costs shall be allowed only as ordered by the court." Fed. R.App. P. 39(a). Rule 39(e) states that "the premiums paid for the cost of supersedeas bonds ... shall be taxed in the district court as costs of the appeal in favor of the party entitled to costs under this rule." Fed. R.App. P. 39(e).

In order to pursue the appeal in *Golden Door III,* Lloyds posted a supersedeas bond. In *Golden Door III,* this court held that "the final judgments entered on behalf of consignors must be vacated. The case is remanded to the district court for further proceedings not inconsistent with this opinion." 8 F.3d at 769. On August 22, 1994, this court issued a corrected Judgment Mandate awarding Lloyds "costs on appeal to be taxed by the Clerk of this court." Lloyds thereafter filed a Verified Motion to Tax Costs seeking reimbursement for the bond premiums.

Relying on *Graham v. Milky Way Barges, Inc.,* 122 F.R.D. 18 (E.D.La.1988), the magistrate judge recommended that the district court deny supersedeas bond premiums because the Judgment Mandate failed to specifically include those costs. The magistrate judge held that when an appellate court vacates the district court's judgment on appeal, Rule 39(a) provides for costs "only as ordered by the [appellate] court." Again, this court's Judgment Mandate failed to explicitly provide for supersedeas bond premiums. Moreover, the magistrate judge refused to imply the inclusion of such bond premium costs because the Judgment Mandate directed the Clerk of this court to tax the costs of appeal, while Rule 39(e) specifically provides for recovery of bond premiums in the district court.

We affirm the denial of supersedeas bond premiums. It appears that this issue is one of first impression in this circuit. Rule 39(a) leaves the imposition of costs to the discretion of the appellate court where the lower court judgment is affirmed in part, reversed in part or vacated. In exercising this discretion, a court must provide a specific directive. The phrase "only as ordered by the court" does not provide the parties with a unfettered right to all costs incurred on appeal. Rather, in cases where this court's determination does not produce closure, we must determine the relief to which the parties are entitled. Where this court's order fails to explicitly grant a class of costs, we must interpret that silence as a rejection of those costs.

We find support for our position in *Conway Groves, Inc. v. Coopers & Lybrand,* 158 F.R.D. 505 (M.D.Fla.1994). Under the facts in *Conway,* this court had affirmed in part, vacated in part and remanded a lower court's decision. This court had also ordered the parties to equally divide the costs of appeal "to be taxed by the clerk of *this court.*" The district court held that Rule 39(a) required the appellate court to specify the costs to be taxed on appeal. Our court's inclusion of the phrase "clerk of *this* court" precluded the district court from awarding supersedeas bond premium costs because Rule 39(e) places bond premium costs within the mandatory auspices of the district court. In contrast, the costs of briefs, appendices and copies of records "undisputably fall within the ambit of the [appellate] court's order because these costs are specifically discussed in Rule 39(c)." *Conway,* 158 F.R.D. at 506; *see also Graham,* 122 F.R.D. at 20. Rule 39(a) places discretion in the appellate court. A general order for the clerk of the appellate court to tax costs encompasses those costs enumerated in Rule 39(e) and does not include costs for supersedeas bond premiums.

D. Calculation of Prejudgment Interest

The final issue is whether the district court properly computed the prejudgment interest from the date of loss rather than from the date payments became due pursuant to the policy. Lloyds contends that "in contract actions interest is allowable from the date that the debt is due." *Lumbermens Mut. Cas. Co. v. Percefull,* 638 So.2d 1026, 1029 (Fla. 4th D.C.A.1994), (*Lumbermens I*), *approved,* 653 So.2d 389 (Fla.1995) (*Lumbermens II*); *see also Columbia Cas. Co. v. Southern Flapjacks, Inc.,* 868 F.2d 1217, 1219 (11th Cir.1989) ("Florida courts have equated the date of the

loss with the date that the proceeds would have been due under the policy.") (internal quotation marks omitted). Paragraph 15 of the policy states that "the amount of loss or damage for which [Lloyds] may be liable shall be payable thirty (30) days after satisfactory proof of loss, as herein provided, is received by [Lloyds]."

The Consignors argue that the district court properly ordered interest from the date of loss. *See Lloyd's U.S. Corp. v. Smallwood,* 719 F.Supp. 1540, 1550 (M.D.Fla.1989), *aff'd,* 903 F.2d 828 (11th Cir.1990). The Consignors assert that an insurer's denial of coverage precludes the insurer from enforcing a provision for payment after the date of loss. *See Independent Fire Ins. Co. v. Lugassy,* 593 So.2d 570, 572 (Fla.3d D.C.A.1992). Moreover, they contend that Paragraph 15 is inapplicable to the facts at issue because the Consignors are claiming legal liability coverage and, thus, were not required to file a proof of loss statement.

We hold that the district court's imposition of prejudgment interest from the date of loss was error. In *Lumbermens II,* the Supreme Court of Florida approved a lower court's determination that "in contract actions interest is allowable from the date that the debt is due." *Lumbermens II,* 653 So.2d at 390. The Consignors cite to *Lugassy* for the exception that "if the insurer denies liability, interest begins to run from the date of the loss, even where the policy provides for payment at a later date." *Lugassy,* 593 So.2d at 572. Both *Lumbermens* decisions, however, were released after *Lugassy.* Moreover, the lower court in *Lumbermens I* cited to *Lugassy* for support, including the proposition that imposing prejudgment interest from the date payment is due furthers public policy. *See Lumbermens I,* 638 So.2d at 1029. Moreover, the Florida Supreme Court seemingly reversed *Lugassy* when it noted:

> The fact that there is an honest and bonafide dispute as to whether the debt is actually due has no bearing on the question. The rule is that if it is finally determined that the debt was due, the person to whom it was due is entitled not only to the payment of the principle of the debt but *to interest at the lawful rate from the due date thereof.*

*Lumbermens II,* 653 So.2d at 390 (quoting *Parker v. Brinson Const. Co.,* 78 So.2d 873, 874 (Fla.1955)). "In cases concerning the recovery of insurance proceeds for property losses, the Florida courts have equated the date of the loss with the date that the proceeds would have been due under the policy." *Columbia Cas. Co.,* 868 F.2d at 1219 (internal quotation marks omitted). We conclude

that our interpretation in *Columbia Casualty* remains viable after the *Lumbermens II* decision.[9] We consequently remand this case to the district court for it to reassess the prejudgment interest from the date payment became due.

## CONCLUSION

The district court correctly determined that "[n]one of the policy's provisions preclude the consignors from recovering their losses from Lloyds." *Golden Door III,* 888 F.Supp. at 1159. Because no genuine issue of material fact exists, we affirm the district court's grant of summary judgment to the Consignors and denial of summary judgment to Lloyds. We also uphold the denial of supersedeas bond premiums. Finally, we affirm the district court's calculation of the Consignors' losses, but remand for the court to recalculate the amount of prejudgment interest, consistent with our instructions.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

[9]The Consignors' argument that they were not required to submit a proof of loss statement lacks merit because they are attempting to collect for the Insureds' legal liability. Paragraph 15 requires Lloyds to tender payment thirty days after receiving a satisfactory proof of loss for "loss or damage for which [Lloyds] may be *liable.*" The coverage afforded to the Consignors falls "within the terms and exclusions of the policy." *Golden Door III,* 8 F.3d at 767.