ALLSTATE INSURANCE COMPANY, Plaintiff,

v.

Richard McCRANIE, et al., Defendants.

No. 87–1510 CIV.

United States District Court, S.D. Florida.

June 12, 1989.

Lori J. Caldwell, Rumberger, Kirk, Caldwell, Cabaniss & Burke, Orlando, Fla., for plaintiff.

Robert A. Lazenby, High, Stack, Lazenby Palahach & Goldsmith, Lewis N. Jack, Jr., Haddad, Josephs & Jack, Coral Gables, Fla., for defendants.

## MEMORANDUM OPINION

HOEVELER, District Judge.

This cause came for consideration before this court upon the plaintiff's motion for summary judgment on the determination of insurance coverage. The plaintiff, Allstate Insurance Company, the insurer, brings an action for declaratory judgment pursuant to 28 U.S.C. sec. 2201(a) to determine its rights and obligations under two homeowner insurance policies covering both Richard McCranie and Virginia McCranie, the defendants and insureds. Jurisdiction is based on diversity of citizenship. Allstate Insurance Company (Allstate) moves for summary judgment and a declaration that it is not obligated to indemnify or defend the insureds in connection with a personal injury lawsuit brought by third parties in state court. The state suit involves an action brought against the insureds, Richard and Virginia, for damages allegedly resulting from Richard's sexual molestation of a minor. The court heard oral argument on the motion for summary judgment on February 23.

**1442**

## I. FACTS

In March, 1986 Richard McCranie, the brother-in-law of Virginia McCranie, was arrested and charged with sexual battery upon Paul Manning in connection with incidents which occurred between January 1, 1984 and February 9, 1986. Richard resided at the home of Virginia, who operated a child care center out of her home. Paul Manning was one of the children she watched over. Richard fondled and had oral sex with Paul. Richard pled no contest and was found guilty of the charge of attempted sexual battery, a first-degree felony. Fla.Stat. § 794.011. He was sentenced to ten years in prison.

In state circuit court, Howard Manning and Diane Manning, as guardians of their minor son Paul Manning, brought a civil action against Richard and Virginia McCranie for the sexual molestation of Paul. *Manning v. Richard McCranie*, Case No. 86–45822. The Mannings allege that Richard McCranie assaulted, battered, and sexually abused Paul by performing various sexual acts upon and with Paul. The sexual acts, as shown by discovery, consisted of Richard's having oral sex with and fondling Paul on several occasions from 1982 to 1986. The Mannings further allege that Virginia McCranie breached her duty to supervise and care for Paul Manning while he was a guest in her house, that she was aware of Richard's conduct, and that she took no action to prevent the abuse.

Richard McCranie has a history of child molestation. He had been convicted of a sexual crime involving minor children in 1979. Dr. Seth Krieger, a Ph.D. in clinical psychology who treated Richard, testified that Richard is a pedophile. Pedophilia is an illness or mental disorder resulting in those affected desiring sexual involvement with children. Pedophiles believe that sexual contact with a child is not wrong and think that they are giving pleasure to the young victim. *See* Deposition of Dr. Krieger at page 6.

The defendants, Virginia McCranie and Richard McCranie, were insured by Allstate under two homeowner insurance policies. From January 15, 1984 through January 14, 1985, the McCranies were insured by Allstate under form AU409. Beginning on January 15, 1985, they were insured by Allstate under form AU9601. Form AU9601 of the policy provides:

Losses We Cover:

Allstate will pay all sums arising from an accidental loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy. Form AU9601 at 23.

Form AU409 has similar coverage, but lacks the language on "accidental loss." Form AU409 at 17.

The policy excludes coverage for intentional acts of the insureds. Form AU409 provides: "We do not cover bodily injury intentionally caused by an insured person." Form AU9601 provides:

We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person.

The policy AU9601 defines bodily injury as follows: "bodily injury, sickness or disease, including required care, loss of services and resulting death." Form AU9601 at 3. Form AU409 contains a similar definition of bodily injury.

As stated, Allstate seeks a summary adjudication that the policies do not provide coverage for the injury caused by the sexual molestation of Paul Manning by Richard McCranie. Allstate asserts that the policies specifically excludes coverage on three separate grounds: the injury was emotional and psychological and not bodily; the sexual abuse was not accidental; and the sexual acts of Richard were intentional. Allstate further argues that as to Virginia McCranie the policy does not provide coverage since the underlying acts of her brother Richard were intentional and, therefore, excluded from coverage.

The motion for summary judgment presents several issues for the court's consideration in determining coverage under the policy:

A. Whether having oral sex and fondling the genitals of a minor is bodily injury, where the minor has asserted the activities of Richard McCranie caused him pain and where the complained of injury is essentially emotional and psychological.

B. Whether the sexual molestation was an accident, when Richard McCranie had psychological problems and may not have determined that he was hurting Paul, and conversely, under the other provision of the policy, whether the sexual molestation was intentional, where Richard McCranie had psychological problems and may not have considered that he was hurting Paul.

C. Whether Virginia McCranie is excluded from coverage if the acts of her brother co-insured, Richard, which were the underlying bases for the complained of injury, are found to be intentional and where the claim against her is for negligent supervision.

DISCUSSION

Summary judgment is appropriate only where there is no genuine issue as to any material fact, and where the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The party who moves for summary judgment bears this exacting burden. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156, 90 S.Ct. 1598, 1607, 26 L.Ed.2d 142 (1970). The court must not decide any material factual issues it finds in the record. If such are present, the court must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1981).

A. Bodily injury coverage

■ The plaintiff Allstate argues that the injuries sustained by Paul Manning were emotional and psychological and not physical bodily injury. The policy covers "bodily injury," which is defined as "bodily injury, sickness or disease, including required care, loss of services and resulting death." The plaintiff cites cases for the proposition that the term "bodily injury" limits harm covered by the policy to physical injury, sickness or disease. *See Rolette County v. Western Casualty & Surety*

*Co.*, 452 F.Supp. 125, 130 (D.N.D.1978) (coverage did not include emotional harm resulting from seizure of mobile home); *West American Insurance Co. v. Bank of Isle of Wight*, 673 F.Supp. 760 (E.D.Va. 1987) (coverage did not include emotional distress resulting from wrongful termination of employment).

These cases, however, do not involve initial physical contact or sexual molestation in particular. Most of Paul's injury is alleged to be psychological and emotional. He has nightmares; he is afraid of the dark. His grades in school are poor. He suffers from depression. The sexual abuse of Paul, however, entailed physical contact with Richard McCranie, which resulted in the emotional injury because of the abuse. The resulting emotional injuries can be traced to the sexual abuse, which was the result of physical contact. Mrs. Manning, Paul's mother, stated in her deposition that Paul complained that his penis hurt because of the frequency of contact with McCranie. In any event, the activities perpetuated on Paul were against his person and not against his property. Paul had been hospitalized for 24-hour periods and received outpatient treatment throughout the litigation, all of which presumably grew out of physical contact with Richard. Paul's injuries are, therefore, bodily.

B. Accidental loss and Intentional Acts

The plaintiff asserts that injury caused by the sexual molestation is not covered because the policies cover only disability from an "accidental loss." Only policy AU9601 explicitly limits coverage to occurrences of "accidental loss." Although the earlier policy, Form AU409, does not include such language, the plaintiff properly asserts that the requirement of an accidental loss restricts coverage in both policies. Indeed, an implied restriction on coverage for accidental losses is warranted, for "[a]n insurance contract, by its nature, is a contract in which one undertakes to indemnify another against damage arising from a contingent or unknown event." *Allstate Insurance Company v. Talbot*, 690 F.Supp. 886 (N.D.Cal.1988). The Florida courts have

adopted the following definition of accident:

[I]n legal parlance an accident under the terms of an insurance policy, such as we have here, is variously defined as an unusual and unexpected event, happening without negligence; an undesigned, sudden, and unexpected event; chance or contingency; happening by chance or unexpectedly; an event from an unknown cause or an unexpected event from a known cause.

*Christ v. Progressive Fire Ins. Co.*, 101 So.2d 821, 822 (Fla. 2d DCA 1958). In a case dealing with child molestation, a Florida court held:

Regardless of the molester's subjective speculation, expectation, or intent to cause or not to cause bodily injury to a molested child, an intentional act of child molestation of a criminal character is not an accident.

*McCullough v. Central Florida YMCA*, 523 So.2d 1208 (Fla. 5th DCA 1988). *See also Hartford Fire Ins. Co. v. Spreen*, 343 So.2d 649 (Fla. 3d DCA 1977) (Assault and battery committed by an insured is not an "accident").

It would be difficult to call the fondling of genitals and oral sex an accident. The actions of Richard McCranie were, to some degree within his control, and not fortuitous, even if he had psychological problems. To the extent there was any question concerning whether the injury was the result of an accident, the same considerations involved in determining the coverage exclusion for intentional acts guide this court in the determination of the question. The discussion on intentional acts is, therefore, applicable in this kind of case to the presence or lack of an accidental loss.

The plaintiff argues that making a minor engage in fellatio and fondling the minor's genitals is an intentional act, the injuries from which are excluded from coverage. The first policy excludes coverage for injury "intentionally caused by an insured person." The second policy, form AU9601, has a more detailed exclusion:

any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person.

The defendants argue that Richard's mental state did not permit him to know that he was hurting Paul by engaging in molestation. As in the case where "accidents" provide the only basis for recovery, the issue presented here is whether Richard engaged in an intentional act in molesting Paul.

### 1. Insanity

Defendants assert that there is a material issue as to the sanity of Richard. The acts of an insane person are not intentional acts within the meaning of an insurance policy exclusion for intentional injuries. *George v. Stone*, 260 So.2d 259 (Fla. 4th DCA 1972). In reversing an entry of summary judgment in favor of the insurer, the court found that there was a material issue as to whether the insured was insane:

If Mr. Johnson, the insured in the instant case, was suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason, and while in that condition acting on an irrational impulse he shot and injured plaintiff, his act was not intentional within the meaning of the exclusionary clause ... The principle set forth above comports with the guiding principle of insurance law that exclusionary provisions are strictly construed against the insurer, and in favor of providing coverage in order that the purpose of insurance not be defeated.

*George* at 262. *See also Northland Insurance Co. v. Mautino*, 433 So.2d 1225 (Fla. DCA 1983). However, insanity is a limited concept and obviously does not apply to all types of psychological disorders. A person is insane when he cannot determine right from wrong or understand the nature of his act. *Gurganus v. State*, 451 So.2d 817 (Fla.1984).

The defendants offer the testimony of Dr. Kreiger on the question of intent to support the defendants' assertion of the presence of a material issue. He testified that Richard did not intend to harm Paul.

He added that Richard suffers from a disorder known as pedophilia. Dr. Kreiger further testified that "the disorder does not disrupt the thinking process that one cannot determine right from wrong or know the nature of the behavior." Depo at 7. Dr. Kreiger testifies that Richard "knew right from wrong" and "was never insane." Depo at 11 and 16. This court finds that there is no material issue concerning the sanity of Richard.

### 2. Specific intent and general intent

■ Insurance provisions excluding coverage for intentional acts do not result in exclusion unless the insured acted with the specific intent to cause the injury, even where the act which causes an injury was intentionally done. *Employers Commercial Union Insurance Company of America v. Kottmeier*, 323 So.2d 605 (Fla. 2nd DCA 1975). In the absence of an intent to cause harm, such an exclusion does not control even if the act involves a foreseeable consequence of great harm or even amounts to gross culpable negligence. *Allstate Insurance Co. v. Steinemer*, 723 F.2d 873, 875 (11th Cir.1984) (Applying Florida law).

### 3. Conflict in Florida Law

■ There is an apparent dispute in Florida law as to whether the acts involved in child molesting may be used to establish the specific intent of an insured. One court has held that to determine the specific intent of an actor, the actor must be shown to have subjectively intended to cause harm. *Zordan v. Page*, 500 So.2d 608 (Fla. 2nd DCA 1986), *rev. denied*, 508 So.2d 15 (Fla.1987). Several Florida courts have subsequently held that an intent to harm may be inferred as a matter of law by the acts committed. *Landis v. Allstate Insurance Company*, 516 So.2d 305 (Fla. 3d DCA 1987); *McCullough v. Central Florida YMCA*, 523 So.2d 1208 (Fla. 5th DCA 1988). *Allstate Insurance Company v. Travers*, 703 F.Supp. 911 (N.D.Fla.1988).

In *Zordan*, the issue was whether the policy covered the insured's acts of child molestation. The court reversed the grant of summary judgment at the trial level and held that in order for an intentional injury exclusion to apply, the insured must have the specific intent to cause injury. Since the subjective intent of the molester had not yet been determined, the court in *Zordan* held that judgment excluding coverage was premature. The court distinguished between general and specific intent:

> Specific intent is in contrast to general intent. While a person may have the general intent to injure someone from an act which he intended to commit because his general intent to cause the natural result of that act may be presumed whether or not he subjectively intended to inflict the injury, in general he may not be found to have had the specific intent to cause that result unless he can be found to have subjectively intended the result.

*Id.* at 609.

Judge Frank dissented in *Zordan*, stating he was "unwilling to deny the foreseeability of injuries to a child who is subject to sexual abuse." The cases cited by the plaintiff follow, in part, this dissent in *Zordan*. As stated earlier, Florida courts have held that an intent to injure may be presumed as a matter of law from the act of sexual molestation. *Landis v. Allstate Insurance Company*, 516 So.2d 305 (Fla. 3d DCA 1987); *McCullough v. Central Florida YMCA*, 523 So.2d 1208 (Fla. 5th DCA 1988). *Allstate Insurance Company v. Travers*, 703 F.Supp. 911 (N.D.Fla.1988). In *McCullough*, the court held:

> In any event, insurance coverage does not depend upon the child molester's specific intent to do or not to do bodily injury to the child. Regardless of the molester's subjective speculation, expectation, or intent to cause or not to cause bodily injury to a molested child, an intentional act of child molestation of a criminal character is not an accident.

*Id.* at 1208. The court in *Travers* held the exclusion for intentional acts to be an objective rather than a subjective standard. *Travers* at 915–16. *Landis* has been certified to the Supreme Court of Florida and

review has been granted based on the conflict with *Zordan.*

In the absence of controlling forum state law, this court must, after considering the applicable decisions of the district court of appeals, arrive at an independent conclusion. *Dimidowich v. Bell and Howell,* 803 F.2d 1473 (9th Cir.1986). In cases not involving child molestation, Florida courts adhere to the rule that the insured must act with specific subjective intent to cause injury or harm to a third party in order for an exclusion for intentional injury to defeat coverage. *Employers Commercial Union Ins. Co. v. Kottmeier,* 323 So.2d 605 (Fla. 2d DCA 1975); *Grange Mut. Cas. Co. v. Thomas,* 301 So.2d 158 (Fla. 2d DCA 1974); *Cloud v. Shelby Mutual Insurance Co.,* 248 So.2d 217, 218 (Fla. DCA 1971). The proposition that specific intent may be inferred as a matter of law from the factual circumstances surrounding the sexual molestation of a child reflects the rule in a majority of jurisdictions in determining exclusion of coverage for intentional acts of the insured. *CNA Insurance Co. v. McGinnis,* 282 Ark. 90, 666 S.W.2d 689 (1984). *Allstate Insurance Co. v. Kim W.,* 160 Cal.App.3d 326, 206 Cal.Rptr. 609 (1984). *Rodriguez v. Williams,* 107 Wash.2d 381, 729 P.2d 627 (1986).

Because the harm resulting from sexual molestation is the inevitable and logical product of such such an act, the specific intent of a child molester can be inferred from the very act of child molesting as a matter of law. This inference may be overcome by a specific showing that the perpetrator lacked the intent to harm (In effect, a lack of capacity to comprehend the difference between right and wrong). The defendants in this case have not overcome the presumption. There is no basis in the record to infer that Richard McCranie was or is insane.

There is nothing accidental about the activities of an adult who causes a child to engage in sex. Here, there is no issue of insanity. Richard McCranie's conduct, continued over an extended period of time, was intentional, and satisfied the perverted urges he felt. From a policy standpoint we can no more give tacit approval to such conduct (by finding coverage) than in a case where one's twisted urges caused him to commit rape. In the last analysis we must not forget that we are construing contracts. Can it reasonably be concluded that the parties to a contract for insurance (to the extent that we can find any meeting of the minds in such a union) agreed to cover events essentially criminal in nature and by objective standards, intentional? I think not; unless, of course, an insurance contract specifically provides for such coverage.

As the law has developed, our recognition of, and in some cases tacit approval of, the excesses of society has, to some extent, been reflected in legislation and decision. We must not, however, permit ourselves to be hoisted, or better stated lowered, to new levels by these incursions into traditional concepts. It is simply wrong and against any view of proper public policy to give whatever type of tacit approval permitting coverage in this case would give. I note again, in furtherance of these observations, that Richard McCranie pled no contest in his criminal matter. It does not appear from the record that any effort to interpose a plea of insanity was made.

### 4. Facts pertaining to intent

The court infers the specific intent to harm Paul from the acts of Richard in sexually molesting Paul. Richard forced Paul to engage in fellatio and fondled Paul's genitals at several occurrences over a period of several years. A conviction for attempted sexual battery was obtained. Because the injuries resulted from the intentional acts of Richard, claims against Richard relating to these injuries are excluded from coverage.

Even under *Zordan* the court has sufficient basis to find a specific intent to harm. The court in *Zordan* did not take issue with the holdings of non-Florida cases which held that intent to inflict injury may be infered from intent to commit those acts. *Zordan* at 611. The court in *Zordan* held that those cases stood for the proposition that "intentional sexual molestation which

involved penetration or violence or fear thereof may be presumed to have caused intentional injury." *Id. See Linebaugh v. Berdish,* 376 N.W.2d 400 (Mich.App.1985) (acts of assault involved in sexual abuse); *Lehmann v. Metzger,* 355 N.W.2d 425 (Minn.1984); *Allstate Insurance Co. v. Kim W.,* 160 Cal.App.3d 326, 206 Cal.Rptr. 609 (1984); *CNA Insurance Co. v. McGinnis,* 282 Ark. 90, 666 S.W.2d 689 (1984) ("Sexual relations" almost daily).

Penetration is not only limited to vaginal or anal penetration. Fla.Stat. sec. 794.011(1)(h) defines sexual battery as:

> oral, anal, or vaginal penetration by, or union with, the sexual organ of another of the anal or vaginal penetration of another by any object ...

Codifying oral along with anal and vaginal penetration makes oral penetration a crime as well. Oral penetration is just as well a form of penetration which provides evidence of the intent of a molester to harm a child. While there are no allegations of violence, there was fellatio involved. It is not stated whether Paul was forced to perform fellatio on Richard. It is not disputed, however, that Richard had performed fellatio on Paul.

### C. Coverage for co-insured

▮ The plaintiff asserts that the exclusion for intentional acts also excludes coverage for claims against Virginia McCranie, because her conduct is derivative of Richard's conduct. The issue presented in determining coverage for the negligence claim against the insured, Virginia is whether the intentional act of Richard, another insured, precludes coverage for claims brought against the insured, Virginia.

The determination of whether the policy precludes coverage for the action brought against Virginia, the co-insured, turns on whether the policy imposes a joint obligation between insureds and the insurer or whether the policy was several, creating a separate contract with each insured. Joint obligors are those who share an obligation arising out of a unitary or related transaction such as a joint contract. *Mack Indus-*

*tries Division of Hollywood Land Co. v. Baker General Contractor, Inc.,* 456 So.2d 1326, 1327 (Fla. 4th DCA 1984).

Ambiguities in an insurance contract should be resolved in favor of the insured and against the insurer. *Tropical Park, Inc. v. United States Fidelity & Guaranty Co.,* 357 So.2d 253 (Fla. 3d DCA 1978). Limitations or exclusions must be narrowly construed. *Cochran v. State Farm Mutual Automobile Insurance,* 298 So.2d 173 (Fla. 4th DCA 1974). The language in the policy provides sufficient grounds for excluding coverage of an insured when injury is caused by an intentional act of a co-insured. Policy form AU409 defines an "insured person" as

> you and, if a resident of your household, any relative and any dependent person in your care.

The form AU9601 policy defines an "insured person" as

> you and, if a resident of your household:
> a) any relative; and
> b) any dependant person in you care.

Policy at 3. Richard McCranie resided at the home of Virginia McCranie. He is alleged in the state court complaint to be the brother of Virginia, but the Mannings state that he is instead the brother-in-law of Virginia. The McCranies in their answer to this declaratory action admit that both Richard and Virginia are insureds under the policies. Allstate considers both of them as insureds.

The policy provides for the exclusion of coverage for injuries attributable to an intentional act of an insured. Policy form AU409 provides that "we do not cover bodily injury intentionally caused by an insured person." Policy form AU409 at 17. Policy form AU9601 exclusion reads as follows:

> We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person.

Policy form AU9601 at 23.

The language in both policies provides for exclusion of coverage for injuries intentionally caused by an insured, whether or

not that insured person is the party being sued or the intentional actor. The use of "an insured" in the exclusion language as opposed to "the insured" results in denial of coverage for a negligent insured if another insured committed an intentional act. *Allstate Insurance Co. v. Roelfs*, 698 F.Supp. 815 (D.Alaska 1987). In *Roelfs*, the Raymond Roelfs, a teenager, sexually molested two minor girls who were guests at his parents home. *Id.* at 816. The parent of the minor girls brought civil assault claim against Raymond and a negligence claim against the parents. *Id.* at 817.

Allstate brought a declaratory action to determine whether its homeowners policy excluded coverage for the negligence claim against the insured parents for the injuries resulting from the acts of another insured, Raymond. The policy at issue in *Roelfs* excludes from coverage "bodily injury ... intentionally caused by an insured." *Id.* at 822. The court reasoned that because the exclusion applies to intentional acts of "an insured" as opposed to intentional acts of "the insured," it applies to all claims which arise from the intentional acts of any one insured, even though claims are stated against another insured party in a somewhat different form. *Id.* The court concluded that "if the claims arise from bodily injury intentionally caused by any one insured, all claims are excluded, regardless of whether they are stated against a different insured for unintentional conduct." *Id.* at 822.

Where coverage and exclusion are defined in terms of "the insured," by contract, the insurance contract between the insurer and the several insureds is considered to separable rather than joint. *Unigard Mutual Ins. Co. v. Argonaut Ins. Co.*, 579 P.2d 1015 (Wash.App.1978). In *Unigard*, the policy excluded intentional acts of "the insured" from coverage. The court in *Unigard* held that the intentional act of a son who started a fire did not bar coverage for the negligence claim brought against the parents. *Id.* at 1019. *Compare Travelers Ins. Co. v. Blanchard*, 431 So.2d 913 (La.App.1983) (Exclusion for intentional acts of "an insured" resulted in denial of coverage for vicarious liability action against father when the son stole some jewelry).

Under more explicit language creating a joint obligation among the insureds, it has been held that intentional acts of an insured precluded coverage for claims brought against another co-insured for injuries resulting from those acts. *Allstate Ins. Co. v. Childs*, No. 87–1055–Civ–ORL–18 (M.D.Fla. July 7, 1988). The wife of an insured who sexually molested a minor in the home was bound by the intentional conduct of her husband, because the policy imposed a joint obligation on all insureds. *Id.* at 9–10. The policy in *Childs* provided the following obligation:

> The terms of this policy impose a joint obligation on the persons defined as an insured person. This means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person.

*Id.* at 8. The policy did not cover "bodily injury ... which may reasonably be expected to result from the intentional or criminal acts of an insured person ..." *Id.* at 5. The court found that the contract imposed joint obligations which were interdependent. *Id.* at 10. Although the language in the policy at issue here is not as explicit in creating a joint obligation, the language is sufficient to demonstrate that the intentional act of any insured negates coverage for claims brought against another insured. The insureds, Richard and Virginia, parties share a joint obligation.

The defendants argue that the acts of one co-insured do not void the coverage of an innocent co-insured, citing *Auto–Owners Insurance Co. v. Eddinger*, 366 So.2d 123 (Fla. 2d DCA 1979). In *Eddinger*, the court upheld a summary judgment for the ex-wife for coverage for the total loss of the insured premises by a fire allegedly attributable to her ex-husband. Because it was unclear whether the coverage was joint or several, the court found an ambiguity in the exclusion of coverage and construed the contract in favor of the ex-wife as she was an innocent party and not a part of any fraud. *Id.* at 124. The policy in

*Eddinger*, however, concerned an exclusion for acts of "the insured" as opposed to acts of "an insured." *Id.* at 123. The use of "the insured" created the ambiguity upon which the court in *Eddinger* felt obligated to construe the contract in favor of the insured. Additionally, *Eddinger* is distinguishable because the ex-wife was a totally innocent party. Virginia McCranie, by contrast, is being sued for negligence in allowing the co-insured to commit an intentional act of child molesting.

It appears to be clear from the policy that injury caused by the intentional acts of *an insured* is excluded from coverage, even though a suit is brought against another insured on a negligence theory. Coverage for the negligence claims against Virginia McCranie are excluded. Summary judgment shall be granted in favor of the plaintiff Allstate for the coverage of claims brought against Virginia.

III.  CONCLUSION

Richard McCranie was *an* insured. Each of the policies negate coverage when *an* insured performs acts which are intentional and not accidental. The policy does not negate coverage for *the* insured; it simply and clearly says that there is *no* coverage when *an* insured intentionally causes injury or damage.

Plaintiff has demonstrated that there is no material issue of fact as to Richard McCranie's sanity. He is, by normal standards, mentally ill. Legally insane, he is not. Thus his acts were intentional and not accidental. For the reasons stated, a separate order will be entered granting summary judgment for the plaintiff Allstate.

DONE AND ORDERED.