IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE



**FILED**

**October 28, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

**ALLSTATE INSURANCE COMPANY,**

     Plaintiff-Appellee,

Vs.

Davidson Chancery No. 97-1840-III
C.A. No. 01a01-9810-CH-00552

**ROSS JORDAN, SUSAN JORDAN,**
**SEAN JORDAN, ADOLPH C. LAVIN,**
**and JEAN LAVIN, surviving parents of**
**TROY JAMES LAVIN, deceased, and**
**ADOLPH C. LAVIN, in his capacity**
**as administrator of the Estate of Troy**
**James Lavin,**

     Defendants-Appellants.

FROM THE DAVIDSON COUNTY CHANCERY COURT
THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR

Alan M. Sowell; Gracey, Ruth, Howard, Tate & Sowell of Nashville
For Appellee

Floyd N. Price; Williams and Dinkins of Nashville
For Appellants, Jordan

Jeffery S. Frensley and Charles R. Ray of Nashville
Vincent E. Wehby of Nashville
For Appellants, Lavin

*AFFIRMED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD, JUDGE**

**CONCUR:**

**BEN H. CANTRELL,**
**PRESIDING JUDGE, M.S.**

**PATRICIA J. COTTRELL, JUDGE**

This is a declaratory judgment suit brought by the plaintiff, Allstate Insurance Company,

seeking a declaration that it is not obligated to furnish a defense nor to provide liability coverage to the defendants-insureds, Ross and Susan Jordan. Defendants appeal the trial court's order granting Allstate summary judgment.

The facts are undisputed. This case arises out of the shooting death of Troy James Lavin. Prior to the shooting, in early June of 1995, Mrs. Frances Garrison, told Sean Jordan's parents, Ross and Susan Jordan, that she believed Sean had burglarized her home. Mrs. Garrison reported that among the items stolen from her home were shotguns and rifles. Ross Jordan testified at his deposition that he questioned Sean about the burglary and that Sean denied it.

On June 29, 1995, Sean Jordan ordered a pizza from the Pizza Hut on Clarksville Highway, Nashville, Tennessee, and requested that it be delivered to 4213 Hallmark Drive, the Jordan home. Troy James Lavin, an employee of Pizza Hut, delivered the pizza to this address. Sean Jordan shot Troy Lavin multiple times and killed him with a weapon stolen from Francis Garrison's residence. Sean Jordan ultimately pled guilty to the murder of Troy James Lavin.

On April 18, 1996, Adolph Lavin and Jean Lavin, the surviving parents of Troy Lavin, filed suit against Sean Jordan and his parents, Ross and Susan Jordan for two million dollars. The complaint alleged, *inter alia*, that Ross and Susan Jordan negligently supervised their son, Sean, and that the Jordans negligently allowed a weapon in their home when they knew or should have known that Sean possessed a dangerous weapon.

Ross Jordan notified Allstate of the lawsuit on May 14, 1996, which was Allstate's first notice of the shooting. Allstate began defending the Jordans, however, on July 3, 1996, Allstate filed the instant suit against defendants, Adolph and Jean Lavin, Ross, Susan, and Sean Jordan, for a declaration that it was not obligated to furnish a defense nor to provide coverage to Ross Jordan, Susan Jordan or Sean Jordan pursuant to the terms and provisions of the insurance policy. Sean Jordan failed to answer the complaint and a default judgment was entered as to him. Allstate moved for summary judgment, and the trial court granted the motion, holding that Allstate had no further duty to defend the lawsuit against the Jordans and that there was no coverage for the Jordans.

Adolph Lavin, Jean Lavin, Ross Jordan and Susan Jordan have appealed, and the only issue for review is whether the trial court erred in holding that there is no coverage for Ross Jordan and Susan Jordan under the Allstate policy for the shooting death of Troy James Lavin.

Questions involving an insurance policy's coverage and an insurer's duty to defend require the interpretation of the insurance policy in light of claims asserted against the insured. ***Standard Fire Ins. Co. v. Chester O'Donley & Assoc.***, 972 S.W.2d 1 (Tenn. App. 1998). The issues relating to the scope of coverage and an insurer's duty to defend present questions of law which "can be resolved by summary judgment when the relevant facts are not in dispute." ***Id.*** at 5-6. Summary judgment may be granted only when there are no genuine material factual disputes with regard to the claim or the defense asserted in the motion, and when the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.03; ***Byrd v. Hall***, 847 S.W.2d 208, 210 (Tenn. 1993).

In construing contracts, the words expressing the parties' intention should be given the usual, natural and ordinary meaning. ***Ballard v. North American Life & Cas. Co.***, 667 S.W.2d 79 (Tenn. App.1983). Where there is no ambiguity, it is the duty of the court to apply to the words used their ordinary meaning and neither party is to be favored in their construction. ***Id.*** at 83. In ***Ballard***, the Court, quoting from ***Guardian Life Ins. Co. of America v. Richardson***, 23 Tenn. App. 194, 129 S.W.2d 1107 (1939), said:

> Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense. The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence (intention) as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties and embodying requirements, . . .

667 S.W.2d at 82.

The pertinent parts of Allstate's insurance policy issued to the Jordans are:

> **Definitions Used in This Policy**
> 1. "**You**" or "**Your**" means the person named on the Policy Declarations as the insured and that person's resident spouse.
>
> 2. "**Allstate**", "**we**", "**us**", or "**our**" means the company named on the Policy Declarations.
>
> 3. "**Insured person(s)**" means **you** and, if a resident of **your** household:
> a) any relative; and

b) and any dependent person in **your** care.

**Insuring Agreement**
. . .
The terms of this policy impose joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

**Losses We Do Not Cover Under Coverage X:**
1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**.
. . .

Allstate asserts that the intentional act of Sean Jordan, precludes coverage for the Negligence claims brought against the insureds, Ross and Susan Jordan. Appellants argue that the intentional act exclusion language of the Allstate policy is specific only to Sean Jordan and has no bearing upon the liability of Ross and Susan Jordan because the claims against them are for Negligence, rather than intentional misconduct, and because the terms and conditions of the insurance contract are ambiguous.

The Appellants argue that the acts of one co-insured do not exclude coverage for an innocent co-insured. Tennessee adopted the innocent co-insured doctrine in *Ryan v. MFA Mut. Ins. Co.*, 610 S.W.2d 428 (Tenn. App. 1980). In *Ryan*, the insurance company issued its policy to husband and wife. After a fire in the dwelling, husband filed suit to recover the value of contents belonging to him. The co-insured wife was guilty of setting the house on fire and the policy provided that the company would not be liable for a loss occurring "while the hazard is increased by any means within the control or knowledge of the insured." The *Ryan* Court was called upon to construe the policy to determine whether the innocent husband was barred from recovery because of his wife's misconduct in setting fire to the house. The Court held that the husband was entitled to recover because of the particular provisions of the insurance policy in question. The Court said:

> We find that a reasonable person, reading the provisions in the policy at issue here which refer to fraud of "the insured," and neglect of "the insured," etc. would conclude that if *an* insured was guilty of fraud or neglect or increasing of hazard to property, then *he* or *she* may not recover under the policy. If the company wanted to assure its position, i.e. that misconduct of any insured would bar recovery by any other insured, it might have made it clear and unambiguous in the policy and it might

4

> have informed the prospective applicants for insurance of this position from the start. It did not do so in this case and it is bound by the language it unilaterally drafted into the "contract" of insurance between the parties. (Emphasis in original.)

610 S.W.2d at 437.

The Appellants reliance on the innocent co-insured doctrine is misplaced. The policy in **Ryan** concerned an exclusion for acts of "the insured" as opposed to acts of "any insureds" or "an insured." The use of "the insured" created the ambiguity upon which the court felt it was bound.

Appellants also attempt to analogize this case with **Allstate Ins. Co. v. Watts**, 811 S.W.2d 883 (Tenn.1991). In **Watts** the court was concerned with a homeowner's policy which contained an exclusion for "bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, loading or unloading of any motorized land vehicle or trailer." Under the facts of the case the insured and his friend were working on a truck when a flammable liquid caught fire under the truck and the plaintiff who was working on the vehicle sustained serious burns. The plaintiff sued the homeowner alleging that homeowner was negligent in failing to warn him of the presence of the flammable substance and in picking up the flaming pan containing the liquid and then dropping it so as to burn plaintiff. Allstate denied coverage on the ground that the injuries arose out of the maintenance of an automobile. The Supreme Court concluded that the injury was caused in part by an excludable risk, maintenance of a vehicle, but that it was also caused in part by nonexcludable risks, negligence in failing to warn, and spilling flaming liquid.

Appellant argues that **Watts** is controlling because the negligence of Ross and Susan Jordan and the intentional act of Sean Jordan are concurrent causes. However, we believe that **Watts** and the case before us are distinguishable and that we must again look to the policy language. In **Watts**, the Court stated, "It appears that the complaint is not predicated upon a cause of action which would be excluded by the policy, but rather negligence." **Id.** at 888.

In the instant case, we are dealing with an express provision of the policy that makes the act of one insured the act of all insureds. This provision is materially different from the policy provision in **Watts.**

In **Spence v. Allstate Ins. Co.,** 883 S.W.2d 586 (Tenn. 1994), our Supreme Court dealt

5

with a claim by an "innocent co-insured" for property damage under the personal property protection provision of the Allstate policy. Allstate argued that the Ryan doctrine was not applicable to this case because the policy provisions "dealing with the rights of an innocent co-insured are clear and unambiguous from the perspective of the reasonable purchaser of homeowners insurance." The joint obligation provision of the Allstate policy is identical to the joint obligation policy provision in the instant case, as set out above. Allstate is relying upon the policy provision declaring the policy void if *an insured* conceals or misrepresents any material fact. The Court said:

> Allstate contends that because the INSURING AGREEMENT provides that acts of any "insured person" are imputed to every other "insured person," and because the "CONCEALMENT OF FRAUD" section provides that misconduct by "you," which is included within the definition of "insured person," serves to void the policy, the policy unambiguously sets forth Allstate's intention to prevent an innocent co-insured from recovering for losses caused by the wrongdoing of an insured. The Court of Appeals agreed with this argument and based its holding thereon.
> Although we would be inclined to agree if these were the only provisions applicable to this case, other relevant provisions introduce a substantial amount of ambiguity into the status of an innocent co-insured under the policy. . . .

883 S.W.2d at 591.

The Court then pointed out additional provisions of the policy not material to the issues before us, which created ambiguity in the policy concerning coverage for property damage loss by an innocent co-insured. Nothing in the policy in the instant case creates a similar ambiguity. The case illustrates that barring other policy provisions that create an ambiguity, the joint obligation clause of the Allstate policy satisfies the requirement of **Ryan** that the insured purchaser of the policy would be adequately informed "that misconduct of any insured would bar recovery of any other insured." **Ryan**, 610 S.W.2d at 439.

Several courts in other jurisdictions have examined situations involving intentional acts by one insured and allegations of negligence by another insured and have concluded that the determination of whether the policy precludes coverage for the action brought against the insureds turns on whether the policy imposes a joint obligation between insureds and the insurer or whether the policy was several, creating a separate contract with each insured. **Allstate Insurance Co. v. McCranie**, 716 F. Supp. 1440 (S.D. Fla. 1989). Whether there is a

6

joint obligation or a several obligation depends on the contract language. *Id.*

In *McCranie*, the district court sought to determine whether an insurer was obligated to defend or indemnify its insureds who were being sued in connection with a personal injury lawsuit based on the sexual battery on a minor. One insured, Richard McCranie, was being sued based on his own acts against the child, and the other insured, Virginia McCranie, was sued for her negligence in the supervision of the minor, since she was aware of the propensities of her brother-in-law, Richard McCranie. The issue relevant to the matter was whether the intentional acts of Richard McCranie, precluded coverage for claims brought against the insured, Virginia McCranie. The policy apparently did not have a joint obligation clause as in the instant case, but the exclusion in the policy at issue in *McCranie* excluded coverage for "any bodily injury or property damage which may be reasonably expected to result from the intentional or criminal acts of *an insured person* . . ." *Id.* at 1442 (emphasis added). The *McCranie* court determined that the use of "an insured" in the exclusion language as opposed to "the insured" resulted in a denial of coverage for the negligent acts of one insured if the co-insured committed an intentional act. *Id.* at 1448.

*McCranie* relied on *Allstate Insurance Co. v. Roelfs*, 698 F.Supp. 815 (D. Alaska 1987). In *Roelfs*, Raymond Roelfs, a teenager, sexually molested two minor girls who were guests at his parents home. *Id.* at 816. The parents of the minor girls brought a civil assault claim against Raymond and a negligence claim against the parents. *Id.* at 817. In explaining *Roelfs*, the *McCranie* court stated:

> Allstate brought a declaratory action to determine whether its homeowners policy excluded coverage for the negligence claim against the insured parents for the injuries resulting from the acts of another insured, Raymond. The policy at issue in Roelfs excludes from coverage "bodily injury . . . intentionally caused by an insured" . . . as opposed to intentional acts of "the insured," it applies to all claims which arise from the intentional acts of any one insured, even though claims are stated against another insured party in a somewhat different form. *Id.* The court concluded that "if the claims arise from bodily injury intentionally caused by any one insured, all claims are excluded, regardless of whether they are stated against a different insured for unintentional conduct." *Id* at 822.

716 F.Supp. at 1448.

In contrast, where coverage and exclusions are defined in terms of "the insured," the insurance contract between the insurer and the several insureds is considered to be separable

rather than joint. *Unigard Mutual Ins. Co. v. Argonaut Ins. Co.*, 579 P.2d 1015 (Wash. App. 1978). In *Unigard*, a school district sued the parents of a boy who intentionally set fire to trash in a wastebasket in the school building. The only claim against the parents was for negligence. The policy excluded coverage for bodily injury or property damage "expected or intended from the standpoint of the insured." *Id.* at 1017. The court found that "where coverage and exclusion is defined in terms of 'the insured,' the courts have uniformly considered the contract between the insurer and several insureds to be separable, rather than joint." *Id.* at 1019. Accordingly, the court held that the excluded intentional act of the son did not bar coverage for the negligence of the other insureds. *Id.*

The policy language in the instant case specifically excluded coverage for intentional criminal acts of any insured person. Not only is this language quite explicit, but also under the joint obligation clause it is clear that there can be no coverage for any insured when one of the insureds commits an intentional act for which coverage is sought. This clause provides that the acts of an insured person are binding on any other insured person. We find no ambiguity in the language of the policy that would lead an insured to believe that the insurance company would provide coverage for any insured resulting from the intentional acts of any other insured. Sean Jordan's intentional act in shooting Troy James Lavin is binding upon the other insureds under the policy, Ross and Susan Jordan.

Accordingly, the order of the trial court granting summary judgment to Allstate is affirmed. The case is remanded to the trial court for such further proceedings as are necessary. Costs of the appeal are assessed one-half against Jordan appellants and one-half against Lavin appellants. The issue presented by Allstate is pretermitted.

_____
**W. FRANK CRAWFORD, JUDGE**

**CONCUR:**


_____
**BEN H. CANTRELL,**
**PRESIDING JUDGE, M.S.**


_____
**PATRICIA J. COTTRELL, JUDGE**