IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 2000 Session

## RHEA E. BURNS, JR.   v.   NEW YORK LIFE INSURANCE COMPANY

**Appeal from the Circuit Court for Knox County**
**No. 2-238-95     Hon. Harold Wimberly, Jr., Judge**

**FILED SEPTEMBER 26, 2000**

**No. E2000-00158-COA-R3-CV**

Plaintiff, an insurance sales agent for New York Life Insurance Company, alleged that he entered
into an oral agreement with another New York Life Insurance agent for the two agents to sell life
insurance policies to a particular family and share the sales commissions. Some time later, a dispute
arose between Plaintiff and the second New York Life Insurance agent over who was entitled to
receive certain sales commissions. After Plaintiff did not receive a share of those sales commissions,
he sought the assistance of New York Life in resolving his dispute with the second agent. New York
Life accepted statements from both agents and then declined to intervene on Plaintiff's behalf.
Plaintiff brought suit against the second agent and New York Life, but later non-suited the claim
against the agent. Plaintiff alleged that New York Life was contractually required to make a decision
in a commission dispute between its agents, and that if it had made a decision, the industry standard
practice would have required the company to decide in his favor. He sought damages from New
York Life for breach of contract and under a quantum meruit theory. The Trial Court granted New
York Life's Motion for Summary Judgment. Plaintiff appeals. We affirm the Judgment of the Trial
Court.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J.
and HERSCHEL P. FRANKS, J., joined.

Douglas C. Weinstein, Knoxville, Tennessee, for the Appellant, Rhea E. Burns, Jr.

Richard J. McAfee, Chattanooga, Tennessee, for the Appellee, New York Life Insurance Company.

**OPINION**

## Background

Rhea E. Burns, Jr. ( Plaintiff), became an insurance sales agent for New York Life Insurance Company (Defendant), on December 2, 1986, by entering into an "Agent's Contract" with Defendant. That contract provides that Plaintiff receives sales commissions on policies of insurance which he sells, subject to the terms of the contract and to the rules relating to commissions as contained in the Agent's Handbook. The Agent's Handbook provides, at paragraph 13(a)(ii), that "if there is any question or controversy between agents as to who is entitled to a particular commission, the Company's decision thereon shall be final."

Robert H. Noe, a former Defendant in this suit but not a party in this appeal, is also a New York Life Insurance sales agent. In late 1989, Plaintiff learned of an upcoming auction which would be attended by several wealthy families, including members of the Mindle Collier family. Plaintiff desired to secure the insurance business of the Collier family. He contacted Noe and asked Noe to attend the auction with him and to introduce him to Noe's client, Z Buda, who might then introduce Plaintiff to the Collier family. Noe agreed to assist Plaintiff in his efforts, and the two insurance agents agreed orally to share the commissions from the sales of the insurance policies to the Collier family. Through the substantial efforts of both Plaintiff and Noe, term life insurance policies were sold to the Collier family in March 1990. The commissions from the sales were shared between Plaintiff and Noe, with Plaintiff receiving 30% and Noe receiving 70%. Plaintiff says he and Noe originally agreed to a 50/50 split of the commissions, but Noe then asked Plaintiff to designate 70% as Noe's share so that he could qualify for company recognition (Chairman's Council) based on sales. Plaintiff says Noe agreed to pay Plaintiff the remaining 20% from a particular future commission.

In April 1991, Plaintiff received notification from New York Life that a change had been made in the Collier term life insurance policies which resulted in a deduction of $1,147.50 from his sales commissions. Plaintiff attempted to discover what change had been made, and eventually learned that Noe had met with the Colliers on several occasions and had converted the Collier term policies to whole life insurance policies. This conversion resulted in a new sales commission which Noe did not share with Plaintiff. In August 1991, when Plaintiff complained to Noe, Noe gave Plaintiff a personal check for $1,147.50, representing the reduction in Plaintiff's commissions occasioned by the conversion. However, Noe did not share with Plaintiff his new commissions for the conversion of the Collier policies. Plaintiff complained to Noe, but to no avail.

Plaintiff contacted New York Life supervisors and asked for assistance in resolving his commission dispute with Noe. On the advice of a supervisor, he wrote a memo to Bill Reid, New York Life Compliance Officer in Atlanta, on January 6, 1992. In this memo, Plaintiff detailed the events which led to his dispute with Noe, and asked Reid to investigate and "assure that I receive the commissions due me." Two weeks later, Plaintiff resigned from his employment with New York Life, effective February 28, 1992. On February 13, 1992, Mr. Reid responded to Plaintiff's complaint by letter, which we reproduce verbatim:

Dear Mr. Burns:

This is in reply to your letter of January 6, 1992 concerning a conflict between you and Agent Bob Noe. I am unable to assist you in your efforts due to the following:

1. The Company is not a party to agreements between Agents and has no basis for enforcing said agreements.

2. Any agreement you may have had with Agent Noe was verbal and, therefore, prohibits the Company from even giving effective guidance or direction.

3. You indicate that the initial share of 70/30 was based on Council Qualification and not on each Agent's involvement. Even if Numbers 1 and 2 above were not appropriate, the Company prohibits sharing of commissions for the purpose of qualifying for Council or other benefits. This fact alone discourages my consideration of your request.

4. Receiving 30% of the original Term policy does not entitle you to commissions on the Converted permanent policy.

I am sorry that I do not have better news; but, based on the information, no other conclusion is possible.

Sincerely,
William C. Reid
Compliance Officer

Not satisfied with this result, Plaintiff filed this suit against Noe and New York Life on April 12, 1995. New York Life filed a Motion for Summary Judgment on July 20, 1999. On September 21, 1999, Plaintiff filed "Plaintiff's Opposition to Defendant New York Life's Motion for Summary Judgment and Motion for Partial Summary Judgment Against Defendant New York Life." On October 5, 1999, three days before the hearing of Defendant's Motion by the Trial Court, Plaintiff submitted a "Supplemental Memorandum," accompanied by the Affidavit of Morgan G. Brenner, Certified Life Underwriter, of Havertown, Pennsylvania. Mr. Brenner averred that he has over 25 years' experience in sales, management and administration of insurance. He stated that he had reviewed Plaintiff's agent contract with New York Life and the Agent Handbook, the correspondence between Plaintiff and New York Life, and various pleadings in this case. He opined

that "the contract language contained at paragraph 13(a)(ii) of the Agent's Handbook[1] requires New York Life to make a decision to resolve the question or controversy as to the split of commissions between plaintiff and defendant Noe." He further opined:

6. It is my opinion that the February 13, 1992 letter from Mr. Reid to the plaintiff constituted notification from New York Life to the plaintiff that New York Life would not make the decision to resolve the commission dispute between these two agents. Based on my review of the above-referenced documents, no decision resolving this question or controversy was ever made by New York Life.

7. I am quite familiar with the standards of practice relative to the splitting of commissions, which are industry-wide. I am also quite familiar with the scenario of term life insurance policies that are subsequently converted to whole life policies.

8. It is my opinion that it is standard in the life insurance industry that, where commissions are split on the initial sale of term life policies, commissions on whole life conversions and any subsequent sales to those policyholders are also split on the same basis.

9. It is my opinion that it is standard -- even commonplace -- in the life insurance industry for agents to enter into verbal agreements or contracts to split commissions.

10. It is my opinion that New York Life's failure and/or refusal to resolve the commission dispute between plaintiff and defendant Noe was a breach of its contract with the plaintiff.

11. It is my opinion that had New York Life abided by its contract with the plaintiff, that it would have been compelled by industry standard practice to decide in favor of the plaintiff's position, and to enforce a commission split beneficial to the plaintiff, relative to the Collier whole life conversions.

12. It is my opinion that New York Life refused to make the decision in resolution of the commission dispute because it wished defendant Noe to receive the whole life conversion commissions, and to formally decide the matter would have compelled New York Life to decide in plaintiff's favor.

On October 8, 1999, the Trial Court heard Defendant's Motion for Summary Judgment. Based on the briefs of the parties, the evidence of record and arguments of counsel, the Trial Court granted Defendant's Motion. The Court further ordered that Plaintiff's Motion for Partial Summary Judgment with respect to his claim for breach of contract against New York Life

---

[1] As previously stated, that paragraph provides: "if there is any question or controversy between agents as to who is entitled to a particular commission, the Company's decision thereon shall be final."

was therefore moot, and entered final judgment in favor of New York Life pursuant to Tenn. R. Civ. P. 54.02. Plaintiff took a voluntary non-suit of his claim against Noe. Plaintiff appeals the Summary Judgment granted to New York Life on his breach of contract claim only.

## Discussion

Plaintiff argues on appeal that the Trial Court erred in failing to grant partial summary judgment in his favor since no factual dispute exists, and that Defendant, as a matter of law, breached its contract with him. Alternatively, he argues that the Trial Court erred in granting summary judgment to Defendant, as there *are* disputed material facts which create a genuine issue within the meaning of Tenn. R. Civ. P. Rule 56. Defendant responds that Plaintiff has improperly raised the issue of whether the Trial Court erred in failing to grant summary judgment to Plaintiff, since the Trial Court did not take that action.

Plaintiff filed his motion for summary judgment only after New York Life moved for summary judgment. The hearing on October 8, 1999 was to consider New York Life's first-filed motion only. The trial court did not consider Plaintiff's motion at that time or at any other time. Indeed, when the trial court ruled in favor of New York Life on its motion for summary judgment, the court determined that Plaintiff's motion was moot.

While the Trial Court's Judgment does contain language finding Plaintiff's Motion to be moot rather than denying the Motion, implicit in the Trial Court's Judgment, which was based on the record as a whole, including Plaintiff's Motion and accompanying Affidavit, is a finding that Plaintiff's Motion is without merit.

When evaluating a motion for summary judgment, the Trial Court should consider "(1) whether a *factual* dispute exists; (2) whether the disputed fact is *material* to the outcome of the case; and (3) whether the disputed fact creates a *genuine* issue for trial." *Byrd v. Hall,* 847 S.W.2d 208, 214 (Tenn. 1993). A fact is "material" for summary judgment purposes, if it must be decided in order to resolve the substantive claim or defense at which the motion is directed. Tenn. R. Civ. P. 56.01; *Luther v. Compton,* 5 S.W.3d 635 (Tenn. 1999). The Court of Appeals must view the evidence in the light most favorable to the opponent of the motion and all legitimate conclusions of fact must be drawn in favor of the opponent. *Gray v. Amos,* 869 S.W.2d 925 (Tenn. Ct. App. 1993). No presumption of correctness attaches to decisions granting summary judgment when they involve only questions of law. *Hembree v. State,* 925 S.W.2d 513 (Tenn. 1996); Tenn.R.App.P. 13(d).

As stated, Plaintiff contends that no factual dispute exists and if Defendant refused to make a decision which it was required by contract to make, then as a matter of law, Defendant has breached it employment contract with Plaintiff. He contends, alternatively, that there *is* a material disputed fact, which he describes as:

> whether, what New York Life in fact did, was a decision or instead an abrogation of
> its contractual duties. In other words, the question of whether there is a duty is for

the Court; the question of the scope of that duty and whether New York Life failed in that duty is one for the jury.

Defendant responds that New York Life had no contractual duty to make a decision, but once New York Life made a decision, that decision was final. We agree.

We have carefully reviewed the record in this case, and find no genuine issue of material fact in dispute. There is no dispute about what New York Life did in response to Plaintiff's request for assistance. The resolution of the case turns on the interpretation of the employment contract between Plaintiff and Defendant and whether Defendant's undisputed response, i.e., Mr. Reid's letter to Plaintiff, satisfied the terms of that contract. The interpretation of a contract is a question of law, for which our standard of review is *de novo* with no presumption of correctness. Tenn. R. App. P. 13(d); *Eyring v. East Tennessee Baptist Hosp.,* 950 S.W.2d 354, 358 (Tenn. Ct. App. 1997). In construing contracts, the words expressing the parties' intention should be given the usual, natural and ordinary meaning. Where there is no ambiguity, it is the duty of the court to apply to the words used their ordinary meaning and neither party is to be favored in their construction. *Allstate Ins. Co. v. Jordan,* 16 S.W.3d 777, 779 (Tenn. Ct. App. 1999).

The employment contract between Plaintiff and Defendant requires Plaintiff to abide by the terms of the Agent's Handbook. The Handbook states at paragraph 13(a)(ii), that "if there is any question or controversy between agents as to who is entitled to a particular commission, the Company's decision thereon shall be final." The Handbook, by its plain language, obligates the agent to accept the Company's decision as final. It is undisputed that the Company determined that Plaintiff's receipt of 30% of the original Collier Term policy did not entitle him to commissions on the Collier Converted permanent policy. Mr. Brenner's Affidavit states that "industry standard practice" mandates a different result than the one reached by Defendant. While we have serious reservations whether Mr. Brenner's Affidavit and opinions are admissible, Mr. Brenner's opinion, even taken as true, would not change the result in this case. Defendant's decision was that Plaintiff is not entitled to a commission on the conversion of the term life insurance policies to whole life insurance policies. Defendant's decision is final, and there the matter ends. Defendant rendered a decision, just not the one Plaintiff wanted. As a matter of law, there was no breach of contract by Defendant. Accordingly, the Trial Court properly found that Defendant is entitled to Summary Judgment.

## CONCLUSION

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellant, Rhea E. Burns, Jr., and his surety.

_____
D. MICHAEL SWINEY, JUDGE