## PHOENIX INSURANCE COMPANY

v.

## ESTATE OF Mary Napier GANIER, et al.

Court of Appeals of Tennessee, Eastern Section, at Nashville.

June 28, 2006 Session.

Aug. 7, 2006.

Permission to Appeal Denied by Supreme Court Dec. 27, 2006.

Donald Capparella and David Huff, Nashville, Tennessee, and Albert S. Nalibotsky, Charlotte, North Carolina, for the Appellant Phoenix Insurance Company.

Brenda M. Dowdle and Barbara J. Perutelli, Nashville, Tennessee, for the Appellees Estate of Mary Napier Ganier, and Bryan, Ward & Elmore, Inc.

### OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Richards and Richards ("the Tenant") leased a storage facility from Mary Napier

Ganier ("the Landlord"). The lease required the Tenant to obtain personal property insurance for its own benefit. The lease also required the Tenant to obtain a comprehensive general liability policy for the benefit of the Tenant, the Landlord, and the Landlord's rental agent, Bryan, Ward & Elmore ("the Rental Agent"). The Tenant obtained property insurance and comprehensive general liability insurance through Phoenix Insurance Company ("Phoenix"). A metal shed located on property next to the leased premises caught on fire, allegedly due to the negligence of the Landlord and the Rental Agent. The fire resulted in substantial damage to the Tenant's personal property. Pursuant to the property insurance portion of the policy, Phoenix paid the Tenant over $1.1 million for the damage to the Tenant's personal property. Phoenix then filed this subrogation action against the Landlord and Rental Agent. The Trial Court granted summary judgment to the Landlord and Rental Agent after concluding they were additional insureds under the Tenant's insurance policy and, therefore, Phoenix could not pursue a subrogation claim against its own insured. We reverse the judgment of the Trial Court and remand for further proceedings.

### Background

The Landlord owned a storage facility located in Nashville, Tennessee.[1] The Landlord's rental agent leased a portion of the storage facility to the Tenant. On June 18, 1998, a fire started in a metal shed owned by the Landlord. The metal shed was located on property next to the property leased by the Tenant. The fire spread to the property leased by the Tenant, causing substantial damage to the Tenant's personal property located there.

The Tenant was insured through Phoenix, which eventually paid over $1.1 million to the Tenant for damage to the Tenant's personal property.

Phoenix filed the present subrogation lawsuit against the Landlord and the Rental Agent. Phoenix claimed that several times between April 18 and June 18, 1998, the Tenant discovered that vagrants were gaining access to the metal shed located on the adjoining property for purposes of habitation. Phoenix further claimed that the Tenant notified the Landlord and the Rental Agent of the situation. On June 18, 1998, the shed caught on fire and the fire spread to the building leased by Tenant. Phoenix claimed the fire was started by one of the vagrants. In the complaint, Phoenix alleged the Landlord had a duty to exercise reasonable care in maintaining the shed and keeping the property in a safe condition. Phoenix claimed the Landlord breached various duties by:

a. Failing to properly maintain the vacant shed in a safe condition when [the Landlord] knew or should have known it constituted a fire hazard;

b. Failing to secure and/or repair the shed in a manner so that vagrants would not gain access as [the Landlord] knew or should have known it posed a fire hazard;

c. Failing to take the necessary precautions to prevent a fire from occurring within the shed; and

d. Otherwise failing to use due care under the circumstances.

Phoenix brought essentially the same claims against the Rental Agent. Phoenix later amended its complaint to allege liability of the Landlord and the Rental Agent on the basis of various code violations.

---

1. While this lawsuit was pending, Mary Napier Ganier passed away and her estate was substituted as a defendant. For ease of reference, we also will refer to the estate as the "Landlord."

The lease between the Landlord and the Tenant provides, in relevant part, as follows:

The Lessor at its own expense will pay property taxes and casualty insurance except as provided herein. . . .

9. **INDEMNITY**. Lessee shall indemnify Lessor against all expenses, liabilities, and claims of every kind, including reasonable counsel fee, by or on behalf of any person or entity arising out of either (1) a failure by Lessee to perform any of the terms or conditions of this lease, (2) any injury or damage happening on or about the demised premises, (3) failure to comply with any law of any governmental authority, or (4) any mechanic's lien or security interest filed against the demised premises or equipment, materials, or alterations of buildings or improvements thereon.

\* .\* .\*

15. **INSURANCE**.

(a) Tenant, at its sole cost and expense, but for the mutual benefit of Landlord and Tenant, shall during the term of this lease keep the leased premises insured against loss under a Broad Form Comprehensive General Liability Insurance Policy which insures against claims for bodily injury, death, or property damage, occurring on, in or about the leased premises and on, in, or about the adjoining street, property and passageways, such insurance to afford minimum protection, during the term of this lease, of not less than One Million Dollars ($1,000,000.00) in respect of bodily injury or death and of not less than One Hundred Thousand Dollars ($100,00.00) for property damage; and

(b) Tenant shall effect for its own account any insurance on its equipment, inventory, and other personal property.

(c) All insurance provided for in subparagraph (a) shall be effected under valid and enforceable policies issued by insurers of recognized responsibility which are licensed to do business in the State of Tennessee and have been approved by Landlord, such approval not to be unreasonably withheld. Upon the execution of this lease, and thereafter thirty (30) days prior to the expiration dates of the expiring policies theretofore furnished pursuant to the paragraph or any other Paragraph of this lease, Tenant shall provide evidence of the above insurance to Landlord without demand by Landlord. All such insurance may be carried under a blanket policy covering the leased premises and other of Tenant's operations. Certificates of insurance, in form acceptable to Landlord shall be provided to Landlord. Such certificates to be delivered to the offices of Bryan, Ward & Elmore, Inc., and should name Lessor, and Bryan, Ward & Elmore, Inc., as additional insured.

The comprehensive [2] general liability portion of the policy has an endorsement which states: **"ADDITIONAL INSURED—MANAGERS OR LESSORS OF PREMISES."** This endorsement provides that the following are considered additional insureds under the comprehensive general liability policy:

Any manager or lessor of premises with whom you have agreed in a written contract, executed prior to loss to name as an additional insured, but only for the limits agreed to in such contract or the

2. The lease required the Tenant to obtain "comprehensive general liability insurance." The policy refers to that insurance as "commercial general liability insurance." For ease of reference only, we will refer to the insurance throughout this Opinion as "comprehensive general liability insurance."

limits of insurance under this policy, whichever is less.

The Landlord and the Rental Agent filed a motion for summary judgment. In this motion, the Landlord and Rental Agent argued that they were additional insureds under the insurance policy issued by Phoenix, and, as a result, the subrogation claim by Phoenix should be dismissed because Phoenix is prohibited from pursuing a subrogation action against its own insureds. Phoenix responded to the motion, claiming its subrogation rights did not arise from the comprehensive general liability policy. Rather, its subrogation rights arose from a separate property policy issued to the Tenant for which the Landlord and Rental Agent were not additional insureds. Phoenix filed the affidavit of Kennie Parker, who was its underwriting manager when the policies at issue were written. According to Parker:

3. Richards & Richards purchased a package insurance policy, which consisted of multiple lines/types of coverage. The lines/types of coverage were property, comprehensive general liability, crime and inland marine.

4. Each line of coverage under the package policy was considered divisible, which means that each line of coverage could be written individually under the same system and under the same policy symbol (which in this case was 600).

5. Under the package policy, the agent, on behalf of Richards & Richards, submitted separate applications (called ACORDS) for each line of coverage. For example, there was a separate application for property coverage and for liability coverage.

6. Property insurance covers damage to property owned or the responsibility of Richards & Richards, called "first party coverage", and pays the insured the proceeds of the policy for the damage to its own property.

7. Comprehensive general liability (CGL) insurance coverage covers an insured's/additional insured's liability for damage to a third party's property or bodily injury to a third-party that arises out of the operation of the named insured, in this case Richards & Richards.

8. The principal distinction between liability and property insurance is that liability insurance covers one's liability to others, while property insurance covers damage to ones own property.

9. As a result of the June 18, 1998 fire at the leased premises, Richards & Richards made a claim under its property policy coverage with Phoenix. The property policy covered damage to Richards & Richard's property and Travelers/Phoenix responded by paying the claim for that damage.

10. The landlord was not covered under the Richards & Richards property policy.

11. Since the fire originated outside the leased premises, and was unrelated to Richards & Richards' use and operation of the leased premises, the liability coverage was not triggered.

The Trial Court granted the motion for summary judgment filed by the Landlord and Rental Agent. According to the Trial Court:

The lease provided that Plaintiff's subrogor, Richards & Richards, Lessee, would obtain insurance that named the Defendant Mrs. Ganier, Lessor and the Defendant Bryan, Ward & Elmore, Inc. as additional insureds for the mutual benefit of the parties. The insurance was to insure against liability for property damage claims occurring on, in or about the leased premises and on, in or about the adjoining street, property or passage ways . . . .

Phoenix Insurance Company, under Policy No. I–660–370X7176–PHX–98,

provided, among other things, general liability and property coverage to Richards & Richards. Pursuant to an endorsement issued to the insurance policy, CG D1 31 10 95, the Defendants were named as additional insureds under the Plaintiff's insurance policy.

The lease provided that Plaintiff's subrogor, Richards & Richards, Lessee, would indemnify the Defendant Mrs. Ganier, Lessor, as follows:

[9]. INDEMNITY

Lessee shall indemnify lessor against all expenses, liabilities and claims of every kind, including reasonable counsel fees, by or on behalf of any person or entity arising out of ... (2) any injury or damage happening on or about the demised premises.....

By the terms of the insurance policy issued to the Plaintiff's subrogor, Richards & Richards, the Defendants were additional insureds named under the policy's endorsement CG D1 31 10 95, which reads: ADDITIONAL INSURED—MANAGERS OF LESSORS OF PREMISES.

The language of the lease between Richards and Richards, Inc., and Mary Napier Ganier evidences the parties intentions that the insurance was purchased for the mutual benefit of the Plaintiff's subrogor, Richards and Richards, Inc. and the Defendants. Since the Defendants were additional insureds of the Plaintiff under the insurance policy issued to their subrogor, Richards & Richards, Inc., pursuant to the law of Tennessee, *Miller v. Russell*, 674 S.W.2d 290 (Tenn.Ct.App.1983), the anti-subrogation rule applies. Therefore the Plaintiff, as a matter of law, is not permitted to pursue subrogation against the Defendants, its own insureds.

Phoenix appeals raising two issues, which we quote:

1. Whether the anti-subrogation doctrine applies when (1) the Lease expressly makes the Landlord an additional insured only under the comprehensive general liability coverage, but (2) that same Lease expressly requires the Tenant to obtain property insurance coverage on its own personal property solely for its own account?

2. Whether the indemnity clause in the Lease at issue only applies to actions of third parties, and does not exculpate the Landlord and Rental Agent from their own negligence?

### Discussion

■ In *Teter v. Republic Parking System, Inc.*, 181 S.W.3d 330 (Tenn.2005), our Supreme Court recently reiterated the standards applicable when appellate courts are reviewing the granting of a motion for summary judgment. The Court stated:

The purpose of summary judgment is to resolve controlling issues of law rather than to find facts or resolve disputed issues of fact. *Bellamy v. Fed. Express Corp.*, 749 S.W.2d 31, 33 (Tenn.1988). Summary judgment is appropriate only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04; *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993). In reviewing the record, the appellate court must view all the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn.2000). And because this inquiry involves a question of law only, the standard of review is de novo with no presumption

of correctness attached to the trial court's conclusions. *See Mooney v. Sneed,* 30 S.W.3d 304, 306 (Tenn.2000); *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995).

*Teter,* 181 S.W.3d at 337. Issues involving an insurance policy's coverage and an insurance company's duty to defend require "the interpretation of the insurance policy in light of claims asserted against the insured." *Allstate Ins. Co. v. Jordan,* 16 S.W.3d 777, 779 (Tenn.Ct.App.1999). These issues present a question of law which can be resolved by summary judgment when the relevant underlying facts are not in dispute. *Id.* (citing *Standard Fire Ins. Co. v. Chester O'Donley & Assoc.,* 972 S.W.2d 1, 5–6 (Tenn.Ct.App. 1998)).

■ In *Miller v. Russell,* 674 S.W.2d 290 (Tenn.Ct.App.1983), this Court stated as follows with regard to the antisubrogation rule:

> The general rule is that after the insurer has paid a loss, it "is entitled to be subrogated *pro tanto* to any right of action which the insured may have against a third person whose negligence or wrongful act caused the loss." 44 Am.Jur.2d *Insurance* § 1794 (1982). *See Railway Co. v. Manchester Mills,* 88 Tenn. 653, 14 S.W. 314 (1890) where the Court stated that "if the insured owner accepts payment from the insurance company, they (the insurance company) may use the name of the assured in an action to obtain redress from the carrier whose failure of duty caused the loss." *Id.* at 663, 14 S.W. 314. *See also Travelers Insurance Co. v. Williams,* 541 S.W.2d 587 (Tenn.1976); *Wilson v. Tennessee Farmers Mutual Insurance Co.,* 219 Tenn. 560, 411 S.W.2d 699 (1966); *Deming & Co. v. Merchants' Cotton-Press & Storage Co.,* 90 Tenn. 306, 17 S.W. 89 (1891). However, "no right of subrogation exists where the wrongdoer is also an insured under the same policy." 44 Am.Jur.2d, *supra*. . . . .

*Miller,* 674 S.W.2d at 291.

16 Couch on Insurance § 224:38 discusses the precise factual scenario at issue in this case. This treatise provides:

> When the rights at issue concern a person or entity clearly insured as to all the coverages provided by the policy, there is little doubt as to the application of the antisubrogation rule, with most disputes concerning only whether the person is, in fact, an insured at all. . . .

> Whether the entity at issue is, in fact, an insured under only some provisions is an issue which may well have to be resolved through a declaratory judgment action in advance of the subrogation action. Consequently, the practitioner, in order to properly define "insured" within a particular policy, must review the case law that interprets that policy. Each of the following examples should be viewed within this context.

> Given the public policies which underlie the rule, however, a more difficult case is presented when the policy is of a type that extends, or arguably extends, coverage to various persons under some of its provisions, but not all of them. This presents the issue whether an additional insured or coinsured covered against one risk insured by a policy, such as liability, is also considered an insured under coverage against other risks under the policy, such as property damage. This analysis may involve several other subissues for analysis, including:

> 1. Under the terms of the policy, is the entity against which the insurer seeks subrogation recovery an insured under any of the various coverages offered by the language of the policy?

2. If so, was payment for which the insurer seeks subrogation made pursuant to the provision under which the entity is an insured?

Obviously, the issue often arises under policies which combine liability coverage and coverage for damage to the insured's property, since third parties may attain "insured" status as far as the liability coverage is concerned, but will not qualify as an insured under the property protection provisions of the policy. . . .

In many instances, the antisubrogation rule has been held inapplicable to bar an insurer's subrogation action against a third party which is insured for some purposes, where the subrogation claim involves risks or losses for which the third party is not, in fact, covered by the policy.

*Id.* (footnotes omitted)(citing *LaSalle Nat. Bank v. Massachusetts Bay Ins. Co.,* 958 F.Supp. 384 (N.D.Ill.1997) (antisubrogation rule does not preclude insurer from asserting subrogation claim against its own insured where policy does not cover risk at issue)).

■ The lease at issue in the present case provides that "Tenant shall effect *for its own account* any insurance on its equipment, inventory, and other personal property." (emphasis added). The lease is quite clear and unambiguous in requiring the Tenant to obtain this property insurance solely for its own use and benefit. The Tenant did just that. The Landlord and the Rental Agent are not additional insureds under the property insurance obtained by the Tenant solely for its own use and benefit.

The Trial Court held that the "language of the lease between Richards and Richards, Inc., and Mary Napier Ganier evidences the parties intentions that the insurance was purchased for the mutual benefit of the Plaintiff's subrogor, Rich-

ards and Richards, Inc. and the Defendants." We agree with this conclusion only to the extent that the Trial Court was referring to the comprehensive general liability portion of the insurance policy. To the extent that the Trial Court was referring to the property insurance portion of the insurance policy, we conclude that the Trial Court was in error. *See Glens Falls Ins. Co. v. City of New York,* 293 A.D.2d 568, 741 N.Y.S.2d 68, 70 (N.Y.App.Div.2002)(discussing virtually identical facts and holding that "[s]ince the tenant's [comprehensive general] liability insurance did not cover the loss, and the landlords were not added to the tenant's property insurance as additional insureds, the tenant's policy does not cover the landlords with respect to the loss. Thus, the antisubrogation rule does not apply.") (citations omitted).

Phoenix's second issue is "[w]hether the indemnity clause in the Lease at issue only applies to actions of third parties, and does not exculpate the Landlord and Rental Agent from their own negligence." Phoenix acknowledges that the Trial Court never ruled on this issue because its grant of summary judgment was based on the antisubrogation rule.

■ Because of our holding, other issues now must be resolved by the Trial Court, including Phoenix's second issue raised on appeal. Since Phoenix, as subrogor, stands in the shoes of the Tenant, the Trial Court on remand must resolve Phoenix's second issue as stated above, i.e., whether the indemnity provision contained in the lease prohibits the Tenant from filing a claim against the Landlord or Rental Agent for damage to the Tenant's property. If the Tenant is so prohibited, Phoenix as subrogor likewise is so prohibited.

We have already held in this Opinion that the Landlord and the Rental Agent

are not additional insureds under the property insurance policy obtained by the Tenant solely to insure its own property. Our ruling, however, does not resolve totally whether or not the antisubrogation rule is triggered. On remand, if the Trial Court determines that the indemnity clause in the Lease would not prohibit the Tenant from suing the Landlord and Rental Agent for their alleged negligence, the Trial Court then must determine if, based on the facts of this case, a lawsuit filed by the Tenant against the Landlord and Rental Agent for the Tenant's personal property damage would trigger the comprehensive general liability portion of the insurance policy. As held by us, the Landlord and Rental Agent clearly are additional insureds under the comprehensive general liability coverage. In other words, the Trial Court must determine if, pursuant to the comprehensive general liability policy coverage, Phoenix would have a duty to defend or indemnify the Landlord or Rental Agent in a claim brought by the Tenant for its property damage under the particular facts of this case. If the answer to this question is yes, Phoenix cannot pursue a subrogation action against its insureds, the Landlord and Rental Agent.

### Conclusion

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion, and for collection of the costs below. Costs on appeal are taxed equally to the Appellees, the Estate of Mary Napier Ganier, and Bryan, Ward & Elmore.